## S04A0181. EARL v. MILLS.

(598 SE2d 480)

BENHAM, Justice.

Appellant John R. Earl is a resident of Cherokee County. In June 2001, he filed a complaint for declaratory judgment and injunctive relief in which he took issue with the legality of the creation of a "Family Court" in Cherokee County by a standing order of the chief judges of the superior and state courts and the presiding judge of the juvenile court of the Blue Ridge Judicial Circuit. Earl also contended the appointment of two judges to preside over the "Family Court" was illegal and unconstitutional. The trial court dismissed the portions of the complaint seeking declaratory and injunctive relief for failure to state a claim and, after applying the doctrine of judicial immunity, dismissed the claims seeking damages from the chief judge of the superior court. On appeal, this Court affirmed the application of judicial immunity, but reversed the dismissal of that part of the complaint seeking declaratory and injunctive relief and remanded the case to the trial court. *Earl v. Mills*, 275 Ga. 503 (570 SE2d 282) (2002).

After this Court's decision, the chief judges of the superior and state courts and the presiding judge of the juvenile court of the Blue Ridge Circuit entered a second "standing order" superseding the original standing order that precipitated the lawsuit.[1] The second standing order is the focus of this appeal and was entered pursuant to OCGA § 15-1-9.1 (b) (2), which governs the means by which a court

---

[1] "A chief judge of a requesting court or assisting court shall be presumed to act with the consent of all judges of the court." OCGA § 15-1-9.1 (c).

seeks judicial assistance from another court in the county of the requesting court. The order embodied the superior court's intra-county request for judicial assistance from the juvenile court and the response thereto, and outlined the matters the assisting judges would handle. In the order, the judges of the superior court requested judicial assistance from the juvenile court judges "in certain matters of domestic conflict" and the juvenile court judges agreed to provide the assistance, and the state court judges asked that certain classes of cases be reassigned to superior court,[2] to which the superior court judges agreed.[3] The judges took the action "[i]n order to promote efficiency, minimize duplication of effort, and reduce consequent trauma to victims; to address increased and increasing caseload, and [to] adjust caseload assignment made pursuant to previous order." The second standing order began with the January 2003 term of court and was to remain in effect through that term of court or until further order, whichever came first. It stated it was subject to renewal at the commencement of each term of court[4] and would lapse if not renewed, and provided that the judges of an affected court could withdraw from the request and order with one month's notice to the judges of the other affected courts.

On remand, appellant Earl reiterated against the second standing order the challenges he had asserted against the first standing order: the judicial action taken to establish a "Family Division" of superior court violated Article VI, Sec. I, Par. VII of the Georgia Constitution which gives to the legislature the authority to "abolish, create, consolidate, or modify judicial circuits and courts and judgeships . . . ;" the "Family Division" of superior court was unconstitutional since it is not among the classes of courts listed in the Georgia Constitution as those in which the judicial power of the State is vested

---

[2] State courts have jurisdiction concurrent with the superior courts over matters not within the exclusive jurisdiction of the superior court. OCGA § 15-7-4.

[3] In essence, in the criminal arena, all misdemeanor cases involving family violence (see OCGA §§ 19-13-1 and 16-5-94) were to be filed in superior court and all misdemeanor and felony cases, except murder, in which the defendant and victim have children together were to be assigned to the juvenile court judges responding to the request for judicial assistance. Insofar as civil cases were concerned, all petitions to legitimate and petitions to establish paternity (except those initiated by the Georgia Department of Human Resources), and "all divorce, custody, modification, 'TPO' and any other domestic cases related thereto in which there is the coincidence of mutual children of the parties and allegations of violence" were to be assigned to the juvenile court judges responding to the request for judicial assistance. The order noted that, while the responding juvenile court judges and the "described caseload" could be referred to as "Family Division," there was no jurisdictional separation from superior court.

[4] The Blue Ridge Judicial Circuit, made up of Cherokee County, has three terms of court a year, January, May, and September, with each term beginning on the second Monday of that month.

exclusively (Ga. Const. 1983, Art. VI, Sec. I, Par. I);[5] and OCGA § 15-1-9.1 (b) (2) (D), which authorizes an intra-county request for permanent judicial assistance and which appellant contends appellee relied upon to form the Family Division of superior court, is unconstitutional in that it authorizes members of the judicial branch to create and staff permanent judgeships, powers constitutionally reserved to the legislative branch in Ga. Const. 1983, Art. VI, Sec. VII, Par. I, to the Governor in Ga. Const. 1983, Art. V, Sec. II, Par. VIII, and to the voters in Ga. Const. 1983, Art. VI, Sec. VII, Par. I. Appellant sought injunctive relief to restrain and enjoin the existence and practice of the "Family Division" and to restrain and enjoin the juvenile court judges sitting as superior court judges from exercising any authority as judges.

After examining the second standing order against appellant's challenges, the trial court granted summary judgment to appellee Judge Mills. The trial court found the second standing order was an intra-county request for judicial assistance governed by OCGA § 15-1-9.1 (b) (2) (D); the use of juvenile court judges in the superior court pursuant to an intra-county request for judicial assistance did not violate the constitutional requirement that superior court judges be elected; the Blue Ridge courts had not created a separate new court but a division of superior court staffed by judges handling certain types of cases at the request of the superior court judges; the second standing order had not created additional judgeships; the judicial assignments were not unconstitutional since they were temporary and in furtherance of assisting the functions of the superior court; and the provisions of OCGA § 15-1-9.1 (b) (2) (D) "are not unconstitutional as creating permanent judicial assisting positions." This appeal followed.

1. Earl contends the intra-county request and response regarding judicial assistance resulted in the unconstitutional creation of judgeships by the judicial branch (see 1983 Ga. Const., Art. VI, Sec. I, Par. VII, giving authority to the General Assembly to create judgeships), and the use of two juvenile court judges to assist the superior court was an unconstitutional violation of the Governor's constitutional authority to make judicial appointments. See 1983 Ga. Const., Art. V, Sec. II, Par. IX.

After examining both the statute and the constitutional provision from which the statute springs, we conclude that requesting intra-county judicial assistance and receiving that assistance does

---

[5] "The judicial power of the state shall be vested exclusively in the following classes of courts: magistrate courts, probate courts, juvenile courts, state courts, superior courts, Court of Appeals and Supreme Court." Ga. Const. 1983, Art. VI, Sec. I, Par. I.

not constitute the creation of a judgeship. The Georgia Constitution authorizes a judge to exercise judicial power in another court when otherwise qualified to do so, when asked by the other court, and when both the requesting court and the assisting judge's court consent. 1983 Ga. Const., Art. VI, Sec. I, Par. III ("Provided the judge is otherwise qualified, a judge may exercise judicial power in any court upon the request and with the consent of the judges of that court and of the judge's own court under rules prescribed by law."). OCGA § 15-1-9.1 (b)-(m) contain the constitutionally-required "rules prescribed by law." The statute "recognizes that our courts, faced with ever-increasing demands on the judiciary, must be given flexibility to effectively utilize members of the judiciary in mutual assistance." *Massey v. State*, 265 Ga. 632, 634 (3) (458 SE2d 818) (1995), disapproved on other grounds in *Lewis v. McDougal*, 276 Ga. 861, fn. 1 (583 SE2d 859) (2003). The juvenile court judges who agreed to assist the superior court did not become superior court judges; rather, they were juvenile court judges who were qualified to sit on the superior court and were requested to do so by the superior court in time of need. *Massey v. State*, supra, 265 Ga. 632 (2). Since assisting judges do not become judges of the court to which they lend assistance, no judicial position constitutionally required to be filled by election (1983 Ga. Const., Art. VI, Sec. VII, Par. I) or by gubernatorial appointment until election (1983 Ga. Const., Art. V, Sec. II, Par. VIII) is created by the exercise of the authority given in OCGA § 15-1-9.1 (b) (2) to request intra-county judicial assistance. Furthermore, OCGA § 15-1-9.1 (b) (2) does not authorize the judiciary to make appointments to the bench; instead it provides the means to do that which is authorized by the Georgia Constitution — it permits a judicial officer from one court to exercise the power of a requesting court in an effort to assist the requesting court in limited circumstances. See *Massey v. State*, supra, 265 Ga. 632 (2).

2. Appellant Earl also contends appellee Mills and the other judges who participated in the intra-county request and response regarding judicial assistance created a "Family Court," the existence of which is allegedly unconstitutional because such a court is not among those listed in the Georgia Constitution as exclusively vested with the judicial power of the State. See footnote 5, supra. Earl also asserts the creation of a court not set forth in Article VI, Sec. I, Par. I of the Georgia Constitution is a violation of Article VI, Sec. I, Par. VII of the state constitution, which assigns to the General Assembly the power to create courts.

In its order, the trial court concluded the intra-county request and response regarding judicial assistance did not create a separate court. We agree. The intra-county request and response did not establish a separate judicial forum (see *Smith v. Langford*, 271 Ga.

221, 224 (518 SE2d 884) (1999)); rather, it was a constitutionally permitted request for intra-county judicial assistance and the response thereto, and it set out the matters to be handled by the two juvenile court judges who had agreed to assist the superior court.[6] Accordingly, the intra-county request and response was neither an unconstitutional creation of a class of court nor an unconstitutional usurpation of legislative authority by members of the judiciary.

3. Earl takes issue with the trial court's determination upholding the constitutionality of OCGA § 15-1-9.1 (b) (2) (D), which authorizes an intra-county request for judicial assistance when "[a] majority of the judges of the requesting court determines that the business of the court requires the *permanent* assistance of an additional judge or additional judges." (Emphasis supplied.) Compare OCGA § 15-1-9.1 (b) (2) (C), which authorizes an intra-county request for judicial assistance when "[a] majority of the judges of the requesting court determines that the business of the court requires the *temporary* assistance of an additional judge or additional judges." The trial court made conflicting findings on this issue, finding the standing order's assignments to be temporary, and then concluding that OCGA § 15-1-9.1 (b) (2) (D) was not unconstitutional "as creating permanent judicial assisting positions." Because we agree with the trial court's assessment that the request for judicial assistance and the response thereto provided for temporary assistance pursuant to subsection (b) (2) (C), we conclude the trial court erred in assuming the request for judicial assistance and response was a request for permanent judicial assistance pursuant to subsection (b) (2) (D) and ruling on the constitutionality of that subsection.

The judicial order setting forth the request and response for judicial assistance was of limited duration, beginning on the second Monday of January and running through the Sunday before the second Monday of May, the end of the January 2003 term of court. It was subject to termination at any time, upon receipt of 30 days' notice from the superior, state, or juvenile court announcing that court's withdrawal. If the superior and state courts continued to find themselves in need of judicial assistance after the January 2003 term, they had to take affirmative action to renew their request for judicial assistance and the courts providing assistance had to agree to again provide the requested assistance. Because the request and response for judicial assistance is for a specified time of limited duration and

---

[6] Since OCGA § 15-1-9.1 (f), which requires a written designation identifying the time period covered and the cases for which assistance is sought, is not applicable to an intra-county response to a request for judicial assistance (*Lewis v. McDougal*, supra, 276 Ga. 861 (1)), it was not necessary to include the matters to be handled by the two assisting juvenile court judges in the response to the request for judicial assistance.

any court may withdraw from participation after giving 30 days' notice, it is temporary in nature and, accordingly, the subject of OCGA § 15-1-9.1 (b) (2) (C). Therefore, the trial court's ruling on the constitutionality of subsection (b) (2) (D) was inappropriate and we vacate that portion of the trial court's order. In the same vein, we decline to address the constitutionality of subsection (D) since to do so would result in the issuance of an advisory opinion.

Appellant Earl asserts that the superior, state, and juvenile courts have taken permanent action by renewing the order setting forth the request and response for judicial assistance for the May and September 2003 terms of court in the Blue Ridge Circuit. The appellate record contains no renewal orders. However, the trial court's order, entered August 28, 2003, refers to the order "currently in effect," and thereby gives credence to the assertion a request for judicial assistance and response order was entered for the May 2003 term of court. We decline to hold that a request for judicial assistance that spans two terms of court constitutes a request for permanent judicial assistance. See *Massey v. State*, supra, 265 Ga. at 635 (Fletcher, P. J., concurring specially). In the absence of evidence of a judicial request for permanent judicial assistance, we decline to decide whether successive requests for judicial assistance and responses thereto violates the constitutional requirement that superior court judges shall be elected. Ga. Const. 1983, Art. VI, Sec. VII, Par. I.[7]

*Judgment affirmed in part and vacated in part. All the Justices concur, except Fletcher, C. J., who concurs in judgment only.*

DECIDED JUNE 28, 2004.

*Luann M. Evans*, for appellant.
*Thurbert E. Baker, Attorney General, Kathryn L. Allen, Senior Assistant Attorney General*, for appellee.

---

[7] While we do not address the tension between Ga. Const. 1983, Art. VI, Sec. VII, Par. I, which requires superior court judges to be elected, and Ga. Const. 1983, Art. VI, Sec. I, Par. III, which sets no temporal limitation on its authorization of a qualified judge to exercise judicial power in a court that requests assistance, we note that the 1998 amendment to OCGA § 15-1-9.1 (b), adding subsection (D), provides the statutory authority to request permanent judicial assistance that was missing when *Massey v. State*, supra, 265 Ga. at 634, *Cramer v. Spalding County*, 261 Ga. 570, 575 (409 SE2d 30) (1991), and *Hicks v. State*, 231 Ga. App. 552 (499 SE2d 341) (1998), overruled in part in *Lewis v. McDougal*, supra, 276 Ga. 861 (1), were decided.