A04A1621. PITTS v. THE STATE.
(612 SE2d 1)

JOHNSON, Presiding Judge.

A jury found Ryan Craig Pitts guilty of false imprisonment, interference with a 911 call, and simple battery. The jury found him not guilty of criminal trespass, and the trial court directed a verdict of acquittal on a charge of cruelty to children. Pitts appeals, contending that the family court lacked jurisdiction to preside over the felony trial, that the court erred in admitting hearsay evidence, that he was denied effective assistance of counsel, and that the evidence was insufficient to support the convictions. We agree that the trial court erred in admitting statements the victim made to sheriff's deputies during a field investigation. Nonetheless, that error was harmless

given that there was other evidence to support the convictions. Because none of the remaining enumerations has merit, we affirm his convictions.

Viewed in a light most favorable to the verdict, the evidence shows that the Cherokee County Sheriff's Department received a 911 call around midnight from a residence.[1] The caller stated that her husband broke into her house, that a second man was on her porch, and that she needed police to come to her house. The caller, Pitts' wife, yelled "Get away from me," and the call was disconnected. The 911 operator called right back. On the third attempt, Pitts' wife answered. The operator asked what was going on. The victim reported that her husband broke into her house, that he was not supposed to be inside the county, and that she wanted him out of her house. The victim screamed, then the phone was disconnected again.

The 911 operator called the residence two more times. On the second of these attempts, the victim answered the phone and stated that the second man was still standing outside her house, that Pitts broke into her house and was taking a shower, that he did not live there anymore, that he was running around her house with no clothes on, that he was not supposed to be in the county, that he was violating his probation, that "he's wanted," and that he was involved in a police chase the preceding weekend. During this 911 call, the victim ordered Pitts to put on his clothes and get out of her house. The call was again disconnected. The 911 operator made several more attempts to call the residence, but no one answered the phone.

The sheriff's department dispatched three deputies to the scene. Once there, one of the deputies heard a woman screaming inside the house. He went to a bedroom window and shined a flashlight inside. He saw Pitts standing over a woman, holding her down on a bed. Pitts' hands were on the victim's shoulders, and she was screaming and hollering. Pitts turned and looked at the deputy, then ran out of the bedroom and toward the front door. The victim stood up. The deputy at the window asked her if Pitts was armed. She replied that he was not.

Another deputy heard someone inside slam a door, run toward the front door, then move objects around and against the inside of the front door. The deputy heard the person run away from the front door toward the back of the house. The deputies attempted to enter the front door of the residence, but the doorway had been barricaded by a sofa and a recliner.

---

[1] The initial call, as well as several calls made immediately thereafter by the 911 operator to the residence (and comments by the operator apparently to a 911 co-worker between calls) were recorded on a single 911 audiotape and played at trial.

After moving the objects out of the doorway, the deputies heard the woman scream again. They went toward the bedroom, but could not get in. The deputy believed that someone inside the bedroom was pushing against the door. They asked Pitts to let them in, but he kept saying "No." He finally told them they could come in, but they had difficulty doing so because a treadmill had been placed against the inside of the door. When the deputies were able to enter the bedroom, they handcuffed Pitts and took him outside to the patrol car. The deputies then went back inside to talk to Pitts' wife.

The victim told the deputies that she was still married to Pitts, but that they had been separated for about a year. She said that she heard noises in her house and got out of bed to investigate. She found Pitts taking a shower and ordered him to leave. She said she called 911, but that Pitts kept taking the phone from her and hanging it up. She told the deputies that Pitts had pulled her into the bedroom and kept her from leaving. She added that he had placed barricades against the door so she could not leave the room, and that he held a pillow over her face to keep her from screaming.

At trial, Pitts' wife asserted the marital privilege and refused to testify against him. The deputies testified as to what they saw and what Pitts' wife reported to them after they arrived on the scene.

1. Pitts takes issue with the fact that his case was presided over by a Cherokee County "family court" judge. He urges that the Georgia Constitution vests judicial powers only in certain named classes of courts, and that "family court" is not listed. He says that only Fulton County has been specifically authorized by the legislature to operate a family court. Therefore, he maintains, the court lacked subject matter jurisdiction over his felony criminal case. We disagree.

The record in this case contains a standing order entitled "Request for Judicial Assistance/Case Assignments," signed by the chief judges of the Cherokee County superior and juvenile courts, and a judge of the state court. The order provided that, pursuant to OCGA § 15-1-9.1 (b) (2) (D), the judges of Cherokee County's superior, state and juvenile courts have determined that, in order to promote efficiency, minimize duplication of effort, and reduce trauma to victims, they would create a "family court." In the order, the judges requested the assistance of juvenile court judges for certain classes of cases. The order further provided that family violence cases (except murder) would be filed in superior court, and assigned to juvenile court judges responding to the request for assistance. The order stated that "[w]hile the described caseload and responding judges may be referred to as 'Family Court,' [s]aid cases shall have no jurisdictional separation from superior court, and no separate official docket need be kept." It also provided that juvenile court judges shall continue to preside as juvenile court judges in juvenile court.

OCGA § 15-1-9.1 (b) (2) governs the means by which a court seeks judicial assistance from another court in the county of the requesting court. It provides (in relevant part) that if assistance is needed from a judge from the same county, the chief judge of any court within such county may make a written request for assistance to the chief judge of any other court within the county.[2] The request may be made if a majority of the judges of the requesting court determines that the business of the court requires the permanent assistance of an additional judge or judges.[3] If the requesting court is a state or superior court, the assisting judge or judges may hear and decide matters otherwise in the exclusive jurisdiction of the state or superior court.[4]

The intra-county request for assistance made in this case is therefore specifically authorized by OCGA § 15-1-9.1 (b) (2) (D). Therefore, the juvenile court judge, in responding to the superior court judge's order requesting assistance in the case, did have subject matter jurisdiction over the trial of Pitts' case.[5]

2. Pitts' wife refused to testify against him at trial.[6] Pitts urges that because his wife was not available to testify, the court violated the Confrontation Clause of the United States Constitution in admitting the 911 tape of her statements, and in introducing the deputies' testimony regarding statements the wife made after they arrived on the scene.

To support his position, Pitts relies upon the recent United States Supreme Court case of *Crawford v. Washington*,[7] which held that the defendant's Sixth Amendment right to confront witnesses against him was violated when the victim asserted the marital privilege and refused to testify against the defendant, but the trial court admitted statements the victim made to police during questioning. In *Crawford*, the Court held that in order for out-of-court statements which

---

[2] OCGA § 15-1-9.1 (b) (2).

[3] OCGA § 15-1-9.1 (b) (2) (D).

[4] Id.

[5] We note that although the Supreme Court of Georgia has not addressed the constitutionality of the purported creation of a family court pursuant to OCGA § 15-1-9.1 (b) (2) *(D)*, which is the subsection at issue in this case, it has examined a similar intra-county request for judicial assistance made pursuant to OCGA § 15-1-9.1 (b) (2) *(C)* (permitting requests for *temporary* judicial assistance). In *Earl v. Mills*, 278 Ga. 128 (598 SE2d 480) (2004), the Supreme Court held that a Cherokee County superior court order requesting intra-county assistance by establishing a "family court" which would enable juvenile court judges to hear family violence cases docketed in superior court, did not create a separate judicial forum, and was neither an unconstitutional creation of a class of court nor an unconstitutional usurpation of legislative authority by members of the judiciary. In *Mills*, the Court specifically declined to rule on the constitutionality of subsection (D), as the order at issue was made pursuant to subsection (C).

[6] OCGA § 24-9-23 (a) provides that husband and wife shall be competent but shall not be compellable to give evidence in any criminal proceeding for or against each other.

[7] 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

are testimonial in nature to be admissible in a criminal trial, the Confrontation Clause requires that the declarant be unavailable and that the defendant had a prior opportunity for cross-examination.[8] While the Court stopped short of spelling out a comprehensive definition of "testimonial," it noted that the term includes, at a minimum, prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and statements made in police interrogations.[9] The Court stated that the Confrontation Clause applies to witnesses against the accused — those who bear testimony — and that "testimony" is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact, a formal statement made to government officers in the production of testimonial evidence, and made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.[10]

Since *Crawford*, our courts have interpreted "testimonial" statements to include those statements made by witnesses to police officers investigating a crime. For example, in *Moody v. State*,[11] the Supreme Court of Georgia held that "police interrogations" (as delineated in *Crawford*) include the field investigation of witnesses shortly after the commission of a crime.[12] Similarly, in *Jenkins v. State*,[13] the Supreme Court of Georgia noted that police interrogations include structured police questioning and police investigations of a crime.[14]

We hold that the statements the victim made to deputies after they arrived on the scene and arrested Pitts are testimonial since the statements resulted from police questioning during the investigation of a crime.[15] At the time these statements were made, Pitts had already been handcuffed, taken outside, and placed in a patrol car. The victim made statements to government officials which a person would reasonably believe would be available for use at a later trial.[16] Therefore, under *Crawford*, we are constrained to hold that the admission of these statements at trial infringed upon Pitts' constitutional right to confront the witness against him since he had not

---

[8] Id.

[9] Id.

[10] Id.

[11] 277 Ga. 676, 679 (4) (594 SE2d 350) (2004).

[12] Id.

[13] 278 Ga. 598, 605 (604 SE2d 789) (2004).

[14] Id. at 605-606. See also *Bell v. State*, 278 Ga. 69, 71-72 (3) (597 SE2d 350) (2004) (statements victim made to police during course of officers' investigations of complaints made by victim against defendant inadmissible under *Crawford*).

[15] See *Moody*, supra.

[16] See *Crawford*, supra.

had a prior opportunity to cross-examine the declarant about the contents of the hearsay statements.[17]

The 911 calls, however, do not come within the ambit of *Crawford*. Here, the caller's statements were made while the incident was actually in progress. The statements were not made for the purpose of establishing or proving a fact regarding some past event, but for the purpose of preventing or stopping a crime as it was actually occurring. The caller was requesting that police come to her home to remove Pitts, who she said had broken into her house. The statements made during the 911 calls were made without premeditation or afterthought. Accordingly, the 911 tape was not testimonial. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law."[18] Under Georgia law, the 911 statements were admissible as part of the res gestae or as an excited utterance.[19] We find no error in the admission of the 911 tape.

3. Pitts challenges the sufficiency of the evidence to support his convictions, urging the convictions were based solely on hearsay testimony. Pitts was convicted of false imprisonment, interference with a 911 call, and simple battery. We hold that the evidence was sufficient to support his convictions.

A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.[20] In this case, one of the deputies saw Pitts hold the victim down on the bed. The woman screamed as Pitts held her down. Deputies also personally saw or heard Pitts run from the bedroom while his wife remained, heard someone run toward the front door, heard someone move objects around, heard someone run toward the back of the house, heard a door close and a woman scream, heard Pitts tell the deputies they could not come into the bedroom and then, after Pitts told them they could come in, found that a treadmill had been placed against the bedroom door. The victim's pleas on the 911 tape for Pitts to stay away from her also supported the verdict. The evidence was sufficient to prove false imprisonment beyond a reasonable doubt.[21]

A person commits simple battery when he intentionally makes physical contact of an insulting or provoking nature with the person

---

[17] Id.

[18] (Citation and punctuation omitted.) *Demons v. State*, 277 Ga. 724, 727 (4) (595 SE2d 76) (2004).

[19] *Sweney v. State*, 265 Ga. App. 21, 22 (1) (593 SE2d 12) (2003).

[20] OCGA § 16-5-41 (a).

[21] See *Armstrong v. State*, 244 Ga. App. 871, 872 (1) (537 SE2d 147) (2000).

of another.[22] One of the deputies saw Pitts holding the victim down on the bed. The evidence was sufficient to prove battery beyond a reasonable doubt.[23]

The evidence was also sufficient to prove Pitts interfered with a 911 call. OCGA § 16-10-24.3 makes it a crime for any person to verbally or physically obstruct, prevent, or hinder another person with intent to cause or allow physical harm to another person from making or completing a 911 telephone call or a call to any law enforcement agency to request police protection or to report a crime.

The tape of the 911 calls reveals that there were at least eight calls made in rapid succession between the 911 dispatch center and the victim's residence. In the calls in which the victim actually spoke to the dispatcher, the victim was trying to report Pitts and request police protection when the phone call was abruptly interrupted. On one occasion, she yelled "Get away from me!" and the call was interrupted. A second call was disconnected immediately after the victim was connected with the 911 operator. In a third call, the victim again reported that Pitts had broken into her house and that she wanted him out of there. She screamed, and the phone call was disconnected. In a fourth call, she reported Pitts again. This time, she told Pitts "Don't get close to me," and the phone call was terminated seconds later. A rational trier of fact could reasonably infer from the evidence presented that Pitts interfered with the 911 calls.[24]

4. Pitts contends the trial court erred in denying his motion for a new trial because he was denied effective assistance of counsel. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.[25] In order to prevail on an ineffectiveness claim, a convicted defendant must show (1) that counsel's performance was deficient, and (2) that this deficient performance prejudiced the defense.[26] The complaining defendant must make both showings.[27]

(a) Pitts contends counsel was ineffective because he failed to file a motion in limine to prevent the character evidence and hearsay evidence in the 911 tapes from being heard by the jury. Whether to file pretrial motions and how to argue the motions are strategic decisions,

---

[22] OCGA § 16-5-23 (a) (1).

[23] See generally *Grimes v. State*, 232 Ga. App. 155, 156 (1) (500 SE2d 609) (1998).

[24] See *Williams v. State*, 268 Ga. App. 384, 387 (1) (c) (601 SE2d 833) (2004).

[25] *Minton v. State*, 205 Ga. App. 430, 431 (2) (422 SE2d 300) (1992).

[26] Id.

[27] Id.

and when reasonable in the context of the case, do not constitute error.[28]

Although defense counsel filed no motion in limine in this case, the record shows that before the tape was played, defense counsel argued that it was inadmissible because it contained prejudicial remarks. Defense counsel pointed out that the caller remarked that Pitts was on probation, that he was involved in a car chase the preceding weekend, and that he was banned from the county. The trial court overruled counsel's objection and allowed the tape to be played. When it was played in its entirety for the jury, counsel restated his objection and moved for a mistrial. Inasmuch as defense counsel did attempt to prevent the jury from hearing the tape, Pitts has not shown any prejudice caused by his counsel's performance.[29]

(b) Nor has Pitts shown ineffective assistance regarding defense counsel's failure to interview the state's witnesses before trial. At the hearing on the motion for new trial, defense counsel stated that he did attempt to locate at least one of the witnesses, and that he did have conversations with some of the deputies who were listed as the state's witnesses though he could not recall whether they discussed this case. In any event, Pitts has made no showing that his attorney would have discovered any additional information by personally interviewing the witnesses. Further, Pitts has not met his burden of showing that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.[30]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JANUARY 24, 2005 —
RECONSIDERATION DENIED MARCH 15, 2005 — 

*Eric A. Ballinger, Louis M. Turchiarelli*, for appellant.
*Garry T. Moss, District Attorney, Samuel K. Barger, Assistant District Attorney*, for appellee.

---

[28] *Stroud v. State*, 272 Ga. 76, 78 (4) (526 SE2d 344) (2000).
[29] See generally *Owens v. State*, 269 Ga. 887, 889 (2) (b) (506 SE2d 860) (1998).
[30] See *Minton*, supra.