The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Camilo CEVALLOS–ACOSTA, Defendant–Appellant.

No. 03CA0207.

Colorado Court of Appeals, Div. I.

Dec. 1, 2005.

Rehearing Denied Jan. 12, 2006.

Certiorari Denied July 17, 2006.*

* Justice EID does not participate.

Justice MARTINEZ would grant as to the following issues:

Whether the prosecutor's Brady and Rule 16 violations, misstatements of the law, burden-shifting, and improper comments about the defense and the origin of instructions required reversal.

Whether admission of a 911 tape violated the confrontation clause, due process, and CRE 802 and 403.

John W. Suthers, Attorney General, Laurie A. Booras, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

WEBB, J.

Defendant, Camilo Cevallos–Acosta, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder, second degree assault, third degree assault, and two menacing charges. We reverse one of the menacing convictions and otherwise affirm.

According to the People's evidence, several witnesses observed defendant on the victim's back porch immediately before the murder, and one witness saw him with a knife. When the victim drove up behind the house, M.S., her fourteen-year-old son, saw defendant, with a knife, drag the victim out of the truck and say he was going to kill her. Defendant pointed the knife at M.S. and threatened to kill him if he came too close.

M.S. went inside the house to get his father. When M.S. came back outside, he saw the victim lying on the ground and defendant running away holding the knife. The victim's two other children, both age ten, saw defendant stab their mother. The victim died from the stab wounds.

Defendant asserted that another man, who had assaulted him and the victim months earlier, was the killer.

## I.

■ Initially, we reject defendant's assertion that every error which implicates his due process or other constitutional rights must be reviewed for constitutional harmless error. In *People v. Miller*, 113 P.3d 743, 749 (Colo. 2005), decided after defendant had filed his briefs, the supreme court held that "constitutional harmless error analysis is reserved for those cases in which the defendant preserved his claim for review by raising a contemporaneous objection." Thus, unpreserved error is reviewed only for plain error. *People v. Miller, supra; see also People v. Petschow,* 119 P.3d 495 (Colo.App.2004).

## II.

Defendant contends the trial court erred in denying two of his challenges for cause, after which he used peremptory challenges to excuse these two prospective jurors and later exhausted his remaining peremptory challenges. We perceive no error.

■ "A trial court must sustain a challenge for cause if the prospective juror shows enmity or bias towards the defendant or the state or acknowledges a previously formed or expressed opinion regarding the guilt or innocence of the defendant." *People v. Simon,* 100 P.3d 487, 492 (Colo.App.2004) (citing § 16–10–103(1)(j), C.R.S.2005). But expression of a possible source of bias does not require dismissal where the prospective juror agrees to set aside any preconceived notions and make a decision based on the evidence and the court's instructions. *People v. Simon, supra.*

■ The trial court has broad discretion in ruling on a challenge for cause because it is in the best position to view the prospective juror's demeanor. *People v. Dashner,* 77 P.3d 787 (Colo.App.2003). "The deference accorded the trial court's rulings extends to its evaluation of inconsistent or self-contradictory statement[s] of prospective jurors." *People v. Dashner, supra,* 77 P.3d at 789. The trial court's decision will be reviewed for abuse of discretion. *Carrillo v. People,* 974 P.2d 478 (Colo.1999).

## A.

Defendant argues that prospective juror W should have been removed for cause because he was an employee of a public law enforcement agency and he expressed actual bias. We disagree.

### 1.

■ Defendant first asserts that Mr. W was presumptively biased because, having been a volunteer reserve officer for twenty years, he was an employee of a public law enforcement agency within the meaning of Crim. P. 24(b)(1)(XII) and § 16–10–103(1)(k), C.R.S.2005. According to defendant, he should have been automatically excused. We conclude this issue was not preserved for appeal.

Crim. P. 24(b)(1)(XII) and § 16–10–103(1)(k) provide that the trial court shall sustain a challenge for cause if a prospective juror is an employee of a public law enforcement agency. The court need not, however, excuse such a prospective juror sua sponte. *See People v. Coney,* 98 P.3d 930 (Colo.App. 2004) (trial court did not err in failing sua sponte to excuse prospective juror employed with sheriff's office); *see also People v. Hinojos-Mendoza,* 140 P.3d 30 (Colo.App. No. 03CA0645, July 28, 2005). Thus, "it is incumbent upon the challenging party to clearly state of record the particular ground on which a challenge for cause is made. Only in this way can the court and opposing counsel direct appropriate questions to the juror to determine whether the challenge is well taken." *People v. Russo,* 713 P.2d 356, 361 (Colo.1986).

After Mr. W was questioned in chambers regarding his experience as a reserve officer and the effect that this experience might have on his ability to be fair, defense counsel moved "to challenge the juror for cause, because he would place authority on the testimony of a police officer over anybody else." Defendant did not challenge him based on either Crim. P. 24(b)(1)(XII) or § 16–10–103(1)(k).

Accordingly, we decline to address this issue for the first time on appeal. *See People v. Coney, supra.*

## 2.

■ Defendant next asserts that Mr. W should have been excused for actual bias because he said that he would place authority on the testimony of a police officer over anybody else and he expressed hostility toward Mexican nationals, such as defendant. We disagree.

Mr. W admitted that he would weigh police testimony heavily, but also stated that he "could probably be fair." In response to the prosecutor's questions, he said that he wanted to "listen to the facts and make [his] own judgment and decision on it." Furthermore, he expressed belief in the legal system and said he would not find defendant guilty unless the prosecution proved him guilty beyond a reasonable doubt.

Mr. W also expressed frustration that illegal aliens can get benefits without paying taxes and even can sue United States citizens, which had happened to him. However, he also said he had no doubt whatsoever that he could be fair to a Mexican national, and added, "As far as guilty or innocent, no, [defendant's nationality] makes no difference what—so far as."

Accordingly, we discern no abuse of discretion in the trial court's decision to deny the challenge for cause.

## B.

■ Defendant argues that prospective juror G should have been removed for cause because a friend had been murdered five years earlier. We disagree.

Ms. G expressed doubt whether she could be fair and impartial in this case. However, she also stated several times that she would try to be fair and that she would follow the law as instructed. The trial court asked her to think about whether she could be fair and took defendant's challenge for cause under advisement.

Although Ms. G participated in the rest of voir dire, defendant did not renew his challenge for cause. At the end of voir dire, defendant made challenges for cause to Mr. W and another prospective juror, but did not mention his challenge for cause to Ms. G.

Instead, defendant used a peremptory challenge to excuse her.

We conclude defendant abandoned his challenge for cause to Ms. G by failing to request that the trial court grant or deny it before exercising a peremptory challenge to excuse her. *See Feldstein v. People*, 159 Colo. 107, 410 P.2d 188 (1966)(the moving party must see to it that the court rules on the matter at issue), *abrogated on other grounds by Deeds v. People*, 747 P.2d 1266 (Colo.1987).

Accordingly, we discern no error in denial of the challenges for cause.

## III.

Defendant next contends prosecutorial misconduct during voir dire and closing argument violated his right to a fair trial and requires reversal. We disagree.

■ Although a prosecutor may argue all reasonable inferences from the evidence in the record, the prosecutor may not misstate or misinterpret the law. *People v. Wallace*, 97 P.3d 262 (Colo.App.2004).

■ The scope of closing argument rests in the sound discretion of the trial court, whose rulings will not be disturbed on review absent a gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Coria*, 937 P.2d 386 (Colo.1997).

■ Where a defendant does not object to the prosecutor's statements, we review only for plain error. *People v. Dashner, supra*. To constitute plain error, prosecutorial misconduct must be "flagrant or glaringly or tremendously improper" and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Salyer*, 80 P.3d 831, 839 (Colo.App.2003).

■ "Lack of an objection is a factor to be considered in examining the impact of a prosecutor's closing argument .... The lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *People v. Wallace, supra*,

97 P.3d at 269 (quoting *People v. Rodriguez*, 794 P.2d 965, 972 (Colo.1990)).

▮▮▮ Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Weinreich*, 98 P.3d 920 (Colo.App. 2004), *aff'd*, 119 P.3d 1073 (Colo.2005). In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of the misconduct and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction. *People v. Merchant*, 983 P.2d 108 (Colo.App.1999).

### A.

▮▮▮ Defendant first argues that the prosecutor's comments during voir dire and summation improperly defined "after deliberation" as "one thought following another" and thus constitute reversible error. The attorney general concedes, and we agree, that the prosecutor misstated the law, but we discern no reversible error.

"The term 'after deliberation' means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." Section 18–3–101(3), C.R.S.2005.

Here, the prosecutor made several statements during voir dire and one statement during summation defining "after deliberation" as "one thought following another." This definition is not proper. *See People v. Sneed*, 183 Colo. 96, 514 P.2d 776 (1973); *see also Key v. People*, 715 P.2d 319 (Colo.1986).

Defendant failed to object to any of the statements, but now argues that an objection would have been futile in light of the court's use of the same inaccurate definition in ruling on defendant's motion for judgment of acquittal. However, this ruling did not occur until after voir dire, in which all but one of the disputed statements were made. Thus, an objection to the statements during voir dire would not have been futile and would have informed the trial court of the error in the definition being used.

The jury instructions included the correct definition of "after deliberation." We presume the jury followed this instruction. *See People v. Moody*, 676 P.2d 691 (Colo.1984) (court instructed the jurors that they should rely on the evidence and the instructions, not on closing arguments; absent a contrary showing, jury is presumed to have heeded the court's instructions).

Although the prosecutor also made one brief comment improperly defining this element during summation, she did not focus on it. In both voir dire and summation, defendant had ample opportunity to correct the misleading statement, but did not do so.

Accordingly, we conclude that the prosecutor's improper definitional comments did not constitute a material factor leading to defendant's conviction, and thus, we discern no plain error.

### B.

▮▮▮ Defendant argues that the prosecutor repeatedly misstated the People's burden of proof during voir dire in violation of his rights to a fair trial, proof beyond a reasonable doubt, and a properly instructed jury. Again, we discern no reversible error.

Reasonable doubt "means a doubt based upon reason and common sense which arises from a fair and rational consideration of all the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable [persons] to hesitate to act in matters of importance to themselves." CJI–Crim. 3:04–A.

Here, the prosecutor used an example during voir dire that having doubts about important decisions such as buying a house is natural, but if that doubt does not prevent buying the house, then the doubt was not reasonable. She also stated: "[A] reasonable doubt wouldn't just make you stop and hesitate, it would make you want to change your mind." She went on to discuss the difference between beyond a reasonable doubt and beyond a shadow of a doubt, and implied that jurors needed to get past the "little voice in their heads" and make a decision.

Because defendant did not object to any of the statements, we review them only for plain error. *See People v. Miller, supra.*

The prosecutor's entire discussion of reasonable doubt during voir dire occupies only three pages of transcript. She made no similar statements during summation. The jury was properly instructed as to the definition of reasonable doubt, and defense counsel discussed the proper definition of "beyond a reasonable doubt" in closing argument.

Therefore, although the prosecutor's definition of reasonable doubt during voir dire did not track CJI–Crim. 3:04–A, her statements did not undermine the fundamental fairness of the trial. Accordingly, we discern no plain error.

### C.

■ Defendant argues that prosecutorial misconduct during closing argument improperly shifted the burden of proof and denigrated defense counsel. We disagree.

In reference to the earlier assault by the person whom defendant alleged was the killer, the prosecutor told the jury:

> Ask yourself and demand an answer from the defense, what does March have to do with this trial? Nothing. Ask the defense, why are you showing me pictures of knives that were in evidence on the day of this murder .... Demand an answer for that because, folks, I suspect the answer is, well, we have to give you something. We have to blame somebody.

Defendant objected that the comment was an attack on defense counsel. The trial court overruled the objection, but noted that the comments were "pretty much on the edge." The prosecutor then stated: "Folks demand answers to those questions. Make them give you a link .... I don't think they can do that. They can't.... They have to give you something."

Defendant now argues that these comments improperly shifted the burden of proof and suggested both that the defense evidence was not presented in good faith and that defense counsel did not believe in the case. While we do not condone the prosecutor's rhetoric, we cannot say that the trial court abused its discretion in overruling the objection concerning a personal attack. The statements did not directly denigrate the defense or impugn defense counsel's integrity.

Defendant's objection at trial was only that the comments were a personal attack on the credibility of defense counsel. This objection did not preserve other than for plain error review whether the burden was improperly shifted. *See People v. Melendez,* 102 P.3d 315, 322 (Colo.2004) ("We do not require that parties use 'talismanic language' to preserve particular arguments for appeal, but the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it.").

We discern no plain error. The prosecutor did not expressly argue that the defense bore any burden of proof, and the jury was correctly instructed on the People's burden.

### D.

■ Defendant further argues that the prosecutor's comments indicating to the jury that the voluntary intoxication and lesser included offense instructions had been requested by the defense constitute reversible error. We disagree.

The prosecutor stated: "There is another question that you need to ask the defense, why are we getting this [intoxication] instruction if he didn't do it? Intoxication has nothing to do with this case." Again, defendant made no objection.

Although this statement may have implied that the instructions were requested by the defense, it did not explicitly so state. Further, the prosecutor was entitled to point out that the intoxication instruction was inconsistent with the defense theory of misidentification.

This lone comment, although improper, did not undermine the fundamental fairness of the trial and thus is not plain error.

In sum, we discern no reversible error concerning alleged prosecutorial misconduct.

## IV.

Defendant next contends the prosecution's failure to disclose the criminal histories of two prosecution witnesses—R.E. and M.S.—under Crim. P. 16 constitutes misconduct warranting reversal. We agree in part.

As relevant here, Crim. P. 16(I)(a)(1)(V) provides that a prosecutor shall disclose to defense counsel "[a]ny record of prior criminal convictions of ... any person the prosecuting attorney intends to call as a witness in the case."

Evidence that bears on the credibility of a prosecution witness constitutes exculpatory evidence. *People v. Dist. Court*, 793 P.2d 163 (Colo.1990). The prosecutor's disclosure obligation extends to material and information in the possession or control of law enforcement. Crim. P. 16(I)(a)(3); *see People v. Dist. Court, supra.*

"[T]he prosecution's failure to comply with Crim. P. 16 is not reversible error unless the withheld evidence was material to guilt or punishment." *People v. Bradley*, 25 P.3d 1271, 1276 (Colo.App.2001). "Evidence is material ... only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *People v. Bradley, supra,* 25 P.3d at 1276.

The trial court has broad discretion in determining the remedy for a Crim. P. 16 violation. *People v. Dist. Court, supra.* In fashioning a remedy, the court must weigh "the reasons for the Government's delay in affording the required discovery, the extent of prejudice, if any, that defendant has suffered because of the delay, and the feasibility of curing such prejudice by granting a continuance or, if the jury has been sworn and the trial has begun, a recess." *People v. Dist. Court, supra,* 793 P.2d at 168.

The absence of actual knowledge of exculpatory evidence is not a defense to a discovery violation, but it should be considered in determining the appropriate remedy. *People v. Dist. Court, supra* (exclusion of testimony was an abuse of discretion where

prosecution had no actual knowledge of witness's drug problem, although law enforcement had such information).

"[T]he court should impose the least severe sanction that will ensure that there is full compliance with the court's discovery orders." *People v. Dist. Court, supra,* 793 P.2d at 168. The exclusion of prosecution evidence is not favored because it may produce a windfall for the defendant. *See People v. Dist. Court, supra.*

### A.

Defendant first asserts that the prosecution's failure to turn over the criminal history of R.E. was a discovery violation, for which the court should have sanctioned the prosecution by excluding his testimony. We discern no reversible error.

On the Friday before trial, defendant requested that the prosecution produce the criminal histories of each of its witnesses under Crim. P. 16. The prosecutor refused to produce the histories without a court order, which the court declined to enter.

On the morning of trial, defendant again requested a court order that the prosecution provide the criminal histories of its witnesses. The prosecutor responded that he had not run the criminal histories of all his witnesses. The court denied the blanket request for all criminal histories, stating that the information was available to the defense through the Internet and, thus, not in the exclusive control of the prosecutor.

Later that day, after M.S. had testified, defendant raised the issue again, explaining he could not gain access through NCIC or Blackstone to the criminal histories of the witnesses. The court then ordered the prosecution to run the criminal histories on each of its remaining witnesses and turn over any histories found.

The next morning, after having seen R.E. outside the courtroom, one of defendant's attorneys, a public defender, recognized him and informed the court that R.E. had a criminal conviction for felony menacing under a different name. This attorney also identified a conflict with her continued representation

of defendant because she had represented R.E. (under the other name) in his felony menacing case.

The prosecutor explained that in response to the court's order, he had been unable to find any criminal convictions in NCIC or Blackstone under the name R.E. and had only learned of the felony conviction that morning when he interviewed R.E. for the first time.

Defense counsel requested that R.E. be precluded from testifying. The court denied the request, finding that neither side had done anything wrong because the late discovery of the prior conviction was due to the alias name, and both sides had tried without success to find R.E. before trial. The court called in two alternate defense counsel (ADC); one advised defendant of his right to conflict-free counsel, and the other advised R.E. regarding the attorney-client privilege. R.E. then refused to waive the attorney-client privilege with his prior attorney.

ADC also advised defendant that if he wanted to exercise his right to conflict-free counsel, new attorneys would be appointed to his case, and the court would declare a mistrial. Defendant chose to proceed with his present attorneys and waived his right to conflict-free counsel. Defendant's co-counsel, who had not previously represented R.E., then cross-examined him.

We reject defendant's argument that the prosecution violated Crim. P. 16 by failing to produce the criminal history of R.E. before trial. The trial court found, with record support, that because R.E.'s prior felony conviction was under a different name, the prosecution could not have discovered it by searching the NCIC and Blackstone databases. Moreover, the prosecution had no obligation to interview R.E. before trial for the purpose of ascertaining information helpful to the defense.

█ We also reject defendant's argument that his due process rights were violated because he was forced to choose between two substantive rights: his right to conflict-free counsel and his right to a speedy trial. According to defendant, his right to speedy trial would have been violated because had he

exercised his right to conflict-free counsel and agreed to a mistrial, his trial would have been postponed. But even assuming defendant is correct, we have agreed with the trial court that the prosecution did not commit a discovery violation concerning R.E. Thus, the prosecution did not cause this supposed dilemma.

Moreover, the record does not disclose when defendant would have been retried, had he accepted the court's offer of a mistrial. Cf. Mason v. People, 932 P.2d 1377 (Colo. 1997)(§ 18–1–405(6)(e), C.R.S.2005, does not set an absolute new speedy trial time limit, but only excludes the delay caused by a mistrial, not to exceed three months).

In addition, we discern no prejudice to defendant from having waived his right to conflict-free counsel. On defendant's behalf, his co-counsel conducted a thorough cross-examination of R.E., which included impeaching him with his prior conviction. She also brought out that, in consideration for his truthful testimony, the prosecution had promised he would not be charged with criminal impersonation, he would not have problems with serving his probation sentence from the previous charge, and he would not be reported to the Immigration and Naturalization Service by the prosecution.

Thus, the record belies defendant's argument that his right to cross-examine this witness was hampered by a conflict because his co-counsel, who was also a public defender, conducted the examination. Cross-examination by an attorney with no conflict would have yielded the same result.

Accordingly, we discern neither abuse of discretion by the trial court nor prejudice to defendant in the court's decision allowing R.E. to testify but giving defendant the choice between a mistrial and waiver of conflict-free counsel.

## B.

█ Defendant argues that his rights to due process and effectively to cross-examine witnesses were violated because M.S. testified at trial without disclosure to the defense of his pending juvenile robbery case. We agree in part.

Section 13–90–101, C.R.S.2005, provides that the "conviction of any person for any felony may be shown for the purpose of affecting the credibility of [a] witness." Neither pending criminal charges nor prior juvenile adjudications can be used for general impeachment purposes. *People v. Caldwell,* 43 P.3d 663 (Colo.App.2001). But this general rule does not prohibit cross-examination as to bias, prejudice, motivation for testifying, or the hope for leniency with respect to pending juvenile proceedings as consideration for testifying. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *People v. Bowman,* 669 P.2d 1369 (Colo.1983).

A criminal defendant establishes a Confrontation Clause violation by showing the inability to cross-examine with evidence bearing on credibility. *See Vega v. People,* 893 P.2d 107 (Colo.1995). A Confrontation Clause violation requires reversal unless the error was harmless beyond a reasonable doubt. *Vega v. People, supra.* To determine whether an error was harmless beyond a reasonable doubt, we consider several factors, including the importance of the witness's testimony to the People's case, the cumulative nature of the testimony, the overall strength of the People's case, and the presence or absence of evidence corroborating or contradicting the testimony. *Vega v. People, supra.*

Here, at the time of trial, M.S. had been named in a pending juvenile robbery case. However, he had already testified when the court ordered the prosecution to disclose the criminal histories of its remaining lay witnesses, and thus, the prosecutor did not run a check on his criminal history. At sentencing, defendant asked the court to take judicial notice of the juvenile case, explaining that he was preserving an issue for appeal.

We agree with defendant that the prosecutor violated Crim. P. 16 by failing to disclose the pending juvenile case of M.S. before he testified.

M.S.'s testimony supported both the first degree murder charge and the felony menacing charge of which he was the victim. We agree that the error regarding this felony menacing charge was not harmless beyond a reasonable doubt because he was the only witness who testified to the elements of that charge.

In contrast, with regard to the first degree murder charge, M.S.'s testimony was cumulative of other evidence. Further, M.S. did not observe or testify regarding the actual stabbing, which was described by two other witnesses. The "after deliberation" element of first degree murder was established by another witness who saw defendant waiting on the back porch of the victim's house with a knife. This testimony was not controverted.

Accordingly, we conclude the error was harmless beyond a reasonable doubt, except as to the felony menacing charge involving M.S. The conviction on this charge must be set aside.

V.

Defendant next contends the trial court committed reversible error when it admitted hearsay statements on an audiotape of a 911 call in violation of his Confrontation Clause rights. We disagree.

The People assert that defendant's hearsay objection was insufficient to preserve the confrontation issue. Although the question has not been clearly resolved in Colorado, the supreme court has treated general hearsay objections broadly. *See People v. Harris,* 43 P.3d 221, 230 (Colo.2002)(quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980): "The confrontation right and hearsay rules 'stem from the same roots' ...."); *cf. Blecha v. People,* 962 P.2d 931 (Colo.1998). Substantial contrary authority exists. *See, e.g., United States v. Solomon,* 399 F.3d 1231 (10th Cir.2005); *United States v. Chau,* 426 F.3d 1318 (11th Cir.2005). Weighing the need for a specific confrontation objection is especially troublesome where, as here, the case was tried before the announcement of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), but the defendant gets the benefit of *Crawford* on direct appeal.

We need not resolve this question here because even if the confrontation issue was

preserved, we conclude defendant is not entitled to relief.

The right of an accused to confront the witnesses against him is a fundamental constitutional right included in both the United States and Colorado Constitutions. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Crawford v. Washington, supra; People v. Fry,* 92 P.3d 970 (Colo.2004).

Under the Confrontation Clause, if an out-of-court statement made by a nontestifying witness is testimonial, it may be admitted for truth in a criminal trial only if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington, supra; People v. Fry, supra.*

If the statement is not testimonial, its admissibility is controlled by *Ohio v. Roberts, supra,* and *People v. Dement,* 661 P.2d 675 (Colo.1983). *See Compan v. People,* 121 P.3d 876 (Colo.2005).

To meet this test, the prosecution must show at least that the out-of-court statement bears sufficient indicia of reliability, which may be based on application of a firmly rooted hearsay exception. *Compan v. People, supra; People v. Fry, supra.* In *Compan,* the supreme court recognized but expressly declined to resolve the question whether, in light of *Crawford,* the prosecution must still show the declarant's unavailability where the hearsay falls within a firmly rooted exception.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. CRE 801(c). Subject to constitutional limitations, hearsay may be admissible if it meets one of the established exceptions. *See* CRE 802; *see also People v. King,* 121 P.3d 234 (Colo.App.2005).

Here, on direct examination of the witness who called 911, the prosecutor offered a tape of the 911 call. In response to defendant's hearsay objection, the prosecutor sought to lay a foundation that statements in the background were excited utterances. The court made no specific finding that the background statements qualified as excited utterances, but allowed the jury to hear the tape.

On appeal, defendant specifically challenges two background statements as hearsay.

First, in response to a question from the operator asking who stabbed the victim, the caller named defendant, clearly repeating a voice in the background. The caller testified that M.S. had told him it was defendant. No Confrontation Clause issue arises because M.S. testified at trial and was available for cross-examination. *See People v. Argomaniz–Ramirez,* 102 P.3d 1015 (Colo.2004) (admission of prior out-of-court statements does not violate a defendant's right to confrontation where the declarant is subject to cross-examination at trial).

Second, on the tape the caller is heard asking, "The guy that ran by was the guy that did it?" A male voice answered "yes." The caller testified that he did not know who made this statement, and the speaker was never identified. Defendant asserts the statement that the man who ran by was the killer provided an improper link to the caller's testimony identifying defendant as the man who had run by him immediately after the killing.

### A.

We first consider whether this statement by the unidentified declarant, whom defendant had no opportunity to cross-examine, was testimonial, and thus inadmissible under *Crawford v. Washington, supra.* We conclude that because the statement was nontestimonial, it was admissible under *Crawford.*

Although this question has not been addressed in Colorado, a majority of jurisdictions have resolved the issue whether a 911 call was testimonial on a case-by-case basis by determining if the call was made for the purpose of getting help or to provide information for investigative purposes. *See, e.g., United States v. Hinton,* 423 F.3d 355 (3d Cir.2005) (911 call nontestimonial where victim called to request police assistance when someone pulled a gun on him); *United States v. Brun,* 416 F.3d 703 (8th Cir.2005) (911 call nontestimonial where child caller presently was witnessing and describing an argument

that escalated to a fight); *People v. Corella,* 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770 (2004) (911 call nontestimonial where victim calls for assistance and operator asks questions to determine appropriate response); *Pitts v. State,* 272 Ga.App. 182, 612 S.E.2d 1 (2005) (*cert. granted* Sept. 19, 2005) (911 tape nontestimonial where call made to stop a crime in progress); *Gamble v. State,* 831 N.E.2d 178 (Ind.Ct.App.2005) (911 call nontestimonial where principal motivation is not to preserve a statement); *State v. Wright,* 686 N.W.2d 295, 302 (Minn.Ct.App.2004) (statements made during 911 call nontestimonial where made under the stress of that event), *aff'd,* 701 N.W.2d 802 (Minn.2005); *People v. Moscat,* 3 Misc.3d 739, 777 N.Y.S.2d 875 (N.Y.City Crim.Ct.2004) (911 call for help nontestimonial); *People v. Conyers,* 4 Misc.3d 346, 777 N.Y.S.2d 274 (N.Y.Sup.Ct.2004) (911 call placed by witness to fight nontestimonial because her intention was to stop the fight); *State v. Davis,* 154 Wash.2d 291, 111 P.3d 844 (2005) (911 statements should be analyzed on a case-by-case basis to determine whether the call is for help or generated from a desire to bear witness); *State v. Mason,* 127 Wash.App. 554, 110 P.3d 245 (2005) (911 calls focused on getting help rather than on helping the prosecution establish a fact nontestimonial); *State v. Powers,* 124 Wash.App. 92, 99 P.3d 1262 (2004) (911 call made by victim to report violation of protective order and description to assist in apprehension rather than to protect herself testimonial).

Other jurisdictions have held such statements to be testimonial. *See, e.g., People v. West,* 355 Ill.App.3d 28, 291 Ill.Dec. 72, 823 N.E.2d 82 (2005) (statements on 911 calls in response to questions posed for purpose of collecting information useful to criminal prosecution are testimonial); *People v. Cortes,* 4 Misc.3d 575, 781 N.Y.S.2d 401 (N.Y.Sup.Ct. 2004) (911 calls reporting a crime are testimonial regardless of subjective intent of caller); *People v. Dobbin,* 6 Misc.3d 892, 791 N.Y.S.2d 897 (N.Y.Sup.Ct.2004) (911 call describing a robbery in progress interpreted as formal statement reporting a crime rather than a call for help and considered testimonial).

We conclude that the case-by-case approach, which includes consideration of the declarant's intent, is the better rule. *See People v. Sharp,* — P.3d —— (Colo.App. No. 04CA0619, Nov. 3, 2005)(focusing on the declarant's awareness or expectation that the statement may later be used at trial).

We further conclude that the background statement in the 911 call here was nontestimonial, for the following reasons: the caller was seeking immediate help for the victim; the circumstances were exigent; and the statement from the unidentified declarant was neither elicited by nor made to anybody with authority. Hence, admission of the statement does not violate defendant's confrontation rights under *Crawford.*

**B.**

We next consider whether defendant's confrontation rights as to nontestimonial hearsay by the unidentified declarant were violated. We conclude the hearsay was wrongly admitted, but discern no basis for reversal.

Here, unavailability is not at issue because no witness could identify the declarant. The attorney general argues that the statement is admissible under the hearsay exception for excited utterances. We are not persuaded.

An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2); *see People v. King, supra.*

"A hearsay statement is admissible as an excited utterance if its proponent shows (1) the occurrence or event was sufficiently startling to render inoperative the normal reflective thought processes of an observer; (2) the declarant's statement was a spontaneous reaction to the event; and (3) direct or circumstantial evidence supports an inference that the declarant had the opportunity to observe the startling event." *People v. King, supra,* 121 P.3d at 237–38.

We conclude the statement does not meet the excited utterance exception because there is no evidence in the record that the declarant had the opportunity to observe the

startling event. Unlike in *People v. Green*, 884 P.2d 339 (Colo.App.1994), the record does not include sufficient corroborating evidence to infer the declarant's personal knowledge. Accordingly, we further conclude that admission of this statement on the tape was error.

We next examine the statement in the context of other evidence to determine whether its admission was harmless beyond a reasonable doubt, using the factors previously discussed. *Vega v. People, supra; see also People v. Trujillo*, 49 P.3d 316 (Colo.2002); *Blecha v. People, supra.*

First, the statement on the tape was not particularly important to the People's case. The prosecutor did not refer to it in either opening statement or closing argument. The tape was played only once for the jurors, and they were not provided with a transcript.

Second, the evidence was cumulative and uncontroverted. A witness saw defendant waiting on the back porch of the victim's house with a knife. Two witnesses observed the stabbing and identified defendant as the killer. Other witnesses saw defendant running away carrying the knife.

Third, this testimony by the other witnesses also shows the overall strength of the prosecutor's case.

Accordingly, we conclude the error in admitting this evidence was harmless beyond a reasonable doubt.

## C.

Defendant argues that other statements on the 911 tape were unduly prejudicial in violation of his right to a fair trial: (1) a boy's question, "is that your mom?"; (2) the caller's description of the victim's "dying breaths"; and (3) reference to defendant as "this Mexican guy." We disagree.

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. However, "[t]he Colorado Rules of Evidence strongly favor the admission of material evidence, and a trial court has substantial discretion in deciding questions concerning the admissibility of evidence." *People v.*

*Agado*, 964 P.2d 565, 567 (Colo.App.1998) (citation omitted). In reviewing the trial court's exercise of its discretion, we consider the maximum probative value of the evidence and the minimum unfair prejudice. *People v. Gibbens*, 905 P.2d 604 (Colo.1995).

Because defendant did not object under CRE 403 to the statements that he now complains were unduly prejudicial, we review only for plain error. *People v. Miller, supra.* We discern no plain error in the admission of any of these statements.

The statement allegedly made by the boy can barely be heard on the tape. The statements regarding the victim's "dying breaths" were responses to questions from the 911 operator about whether the victim was conscious and breathing. The caller's statement that defendant was Mexican set forth a fact that defense counsel admitted during voir dire when asking prospective jurors whether they would hold it against defendant that he was a Mexican national who could not speak English.

Accordingly, we discern no ground for reversal in admission of the 911 tape into evidence.

## VI.

Finally, defendant contends the trial court erred in failing to instruct the jury that it could consider evidence of voluntary intoxication with respect to the "after deliberation" element of first degree murder. We agree the instruction was flawed, but discern no reversible error.

A trial court has a duty to instruct the jury correctly on the law applicable to the case. However, counsel also has a duty to assist the court by objecting to erroneous instructions and tendering correct instructions. Where, as here, counsel fails either to object or to tender correct instructions, appellate courts will review only for plain error. *People v. Miller, supra; People v. Stewart*, 55 P.3d 107 (Colo.2002).

To constitute plain error, a faulty instruction must have so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the verdict. *Peo-*

*ple v. Garcia,* 28 P.3d 340 (Colo.2001). To warrant reversal under a plain error standard, a defendant must show not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the conviction. *People v. Garcia, supra.*

Here, jury instruction 20 read:

You may consider evidence of self-induced intoxication in determining whether or not intoxication negates the existence of the culpable mental state of specific intent.

The prosecution has the burden of proving all the elements of the crimes charged. If you find the Defendant was intoxicated to such a degree that he did not form the specific intent which is a required element of the crimes of Murder in the First Degree and Assault in the Second Degree you should find the Defendant not guilty of those charges.

Self-induced intoxication is not applicable to the crimes of Murder in the Second Degree, Menacing, or Assault in the Third Degree.

This instruction erroneously omits consideration of intoxication as to the element of deliberation, contrary to *People v. Harlan,* 8 P.3d 448 (Colo.2000). However, defendant's theory was that another person had killed the victim. Defendant did not assert in opening statement or argue in summation that intoxication prevented him from forming the specific intent necessary for first degree murder or from acting after deliberation. Thus, the intoxication instruction as a whole was inconsistent with his theory of the case. *See People v. Villarreal,* 131 P.3d 1119 (Colo. App.03CA2396, Sept. 8, 2005) (no plain error in failing to instruct jury in a manner inconsistent with defendant's theory of defense); *cf. People v. Rivas,* 77 P.3d 882, 886 (Colo.App.2003)(quoting *People v. Cowden,* 735 P.2d 199, 202 (Colo.1987): "Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial.").

Accordingly, we conclude the intoxication instruction was not plain error.

* Justice EID does not participate.

The judgment is reversed with respect to the conviction of felony menacing against M.S. and affirmed in all other respects.

MARQUEZ and PICCONE, JJ., concur.