*Crumbley & Crumbley, Wade M. Crumbley,* for appellants.
*McLarty, Robinson & Van Voorhies, John E. Robinson, Gregory H. Blazer,* for appellees.

S05Q1165. CSX TRANSPORTATION, INC. et al. v. CITY OF GARDEN CITY.
(619 SE2d 597)

HINES, Justice.

The United States District Court for the Southern District of Georgia has certified questions[1] in this litigation by CSX Transportation, Inc. and its affiliates (collectively "CSX") against the City of Garden City ("City") seeking indemnification for property damage

---

[1] See recently amended 1983 Ga. Const., Art. VI, Sec. VI, Par. IV.

and third-party claims arising out of a collision between a passenger train and a tractor trailer operated by the City's subcontractor during a public works project. *CSX Transp. v. City of Garden City*, Civil Action No. 498CV223, slip. op. (S.D. Ga. March 29, 2005) ("*CSX VI*"). For the reasons which follow, the certified questions are declined.

A history of the litigation is necessary. In 1996, the City entered into a series of agreements with CSX to utilize a railroad right-of-way to install water and sewer lines. The agreements required the City to indemnify and hold harmless CSX or its subsidiaries for all liabilities CSX incurred in connection with the project and for which CSX was not the sole cause. The agreements also required the City to maintain insurance covering the indemnity obligations the City had assumed. The City employed ARCO, Inc. ("ARCO") as the general contractor for its pipeline installation project. In October 1997, a National Railroad Passenger Corporation ("Amtrak") passenger train collided with a tractor trailer operated by the City's subcontractor causing CSX to incur substantial property damage and subjecting CSX to third-party claims. CSX sought indemnification from the City in accordance with the agreements. The City refused and CSX[2] brought suit alleging that it was entitled to indemnification.

The District Court granted summary judgment to the City, finding that the indemnification provisions constituted an impermissible waiver of the City's sovereign immunity in the absence of any evidence that the City had liability insurance to cover the indemnity claim. The Eleventh Circuit vacated the entry of summary judgment and remanded the case to the District Court for its consideration of the effect of the City's participation in the Georgia Interlocal Risk Management Agency ("GIRMA"), a multi-government insurance fund. *CSX Transp. v. City of Garden City*, 235 F3d 1325 (11th Cir. 2000) ("*CSX I*"). On remand, the District Court again granted summary judgment to the City, finding that the indemnification agreements were ultra vires and that OCGA § 36-33-1 (a) did not authorize the City to waive its immunity by entering into an indemnity contract. *CSX Transp. v. City of Garden City*, 196 FSupp.2d 1288 (S.D. Ga. 2002) ("*CSX II*").

CSX again appealed to the Eleventh Circuit, which then certified two questions to this Court:

---

[2] There are two plaintiffs in the case: CSX which owns the train track on which the collision occurred and Amtrak, which owns the wrecked train. For convenience, the District Court refers to CSX as if it was the only plaintiff.

1. May a Georgia municipality contractually indemnify a private party for any and all loss, damage, and liability arising in connection with a public works project involving the private party's land?

2. If not, is there any loss, damage, or liability arising in connection with a public works project involving a private party's land for which a Georgia municipality may contractually indemnify the private party?

*CSX Transp. v. City of Garden City*, 325 F3d 1236 (11th Cir. 2003) ("*CSX III*").

This Court answered both certified questions in the negative. *CSX Transp. v. City of Garden City*, 277 Ga. 248 (588 SE2d 688) (2003) ("*CSX IV*"). In so doing, this Court noted that

if the facts behind CSX's cause of action against the City fall within the scope of the coverage provided by the GIRMA policy and sovereign immunity would otherwise apply to that cause of action, the City's sovereign immunity is waived to the extent of such liability coverage.

*CSX IV* at 251. Based upon *CSX IV*, the Eleventh Circuit concluded that

Georgia municipalities may never waive their sovereign immunity by, for example, contracting to indemnify third parties, without (1) express legislative authority or (2) satisfying the requirements of § 36-33-1 (a).

*CSX Transp. v. City of Garden City*, 355 F3d 1295, 1297 (11th Cir. 2004) ("*CSX V*"). The Eleventh Circuit found that "while the indemnification agreement between the City and CSX was correctly determined by the district court to be void as ultra vires," it must again remand the case to the District Court for "consideration of whether, pursuant to OCGA § 36-33-1 (a), Garden City waived its sovereign immunity as to CSX's cause of action by purchasing GIRMA insurance." Id. It further determined that on remand,

the district court must scrutinize the GIRMA policy and consider if the facts behind CSX's cause of action against the City fall within the scope of coverage provided by the GIRMA policy and sovereign immunity would otherwise apply to that cause of action to determine whether the City's sovereign immunity was waived to the extent of such liability coverage.

(Punctuation omitted.) Id. The Eleventh Circuit therefore affirmed in part and remanded in part the decision of the District Court for further proceedings consistent with its opinion. Id. Summary judgment motions by CSX, the City, and ARCO are pending before the District Court.

However, rather than rule on the issue framed by the Eleventh Circuit on remand, the District Court has now certified five questions to this Court regarding the litigation. *CSX VI*, supra. In so doing, the District Court states that while this Court in Division 1 of *CSX IV* "purported to answer both questions in the negative," in Division 2 of the opinion this Court "seemed to qualify its response," and that the two Divisions read together "may support CSX's argument that the *CSX IV* court in many respects answered the certified questions *in the affirmative.*" (Emphasis in original.) *CSX VI*, slip op. at 2. The District Court goes on to discuss a host of "potential issues" which it posits were not dealt with in *CSX IV*. *CSX VI*, slip op. at 7. It has framed five certified questions regarding such "potential issues."[3] However, such questions address matters which have either been decided by this Court in *CSX IV*,[4] are advisory or anticipatory in nature,[5] or appear to involve determinations properly made under federal practice and procedure.

Accordingly, we respectfully decline to answer the certified questions.

*Certified questions declined. All the Justices concur.*

---

[3] The questions are:
1. Could the City, with or without insurance, contract to indemnify CSX for losses *not* caused by the City but arising from its public works project (*i.e.*, where sovereign immunity does not apply)?
2. Could the City, with or without insurance, contract to indemnify CSX for non-SI [sovereign immunity] tort losses *caused* by the City and arising from its public works project (*i.e.*, where sovereign immunity also does not apply)?
3. Did the City have authority to enter into an indemnification contract, under which it promised to pay CSX, *with* insurance funds, for public project losses that the City *did* cause *and* for which sovereign immunity would otherwise apply (hence, for SI torts)?
4. Is any portion or the entirety of the CSX-City indemnity contract, in that it purports to cover all three of the above scenarios, otherwise ultra vires under the free-legislation or unlawful debt doctrines explained *supra*?
5. In that CSX seeks to show sovereign immunity waiver through the City's purchase of insurance, is GIRMA an indispensable party? If so, how should it be added?
(Emphasis in original.)

[4] We take this opportunity to reiterate our holding in *CSX IV*, that the indemnification agreement between the City and CSX is void as an ultra vires contract. *CSX IV* at 250 (1).

[5] This Court will not issue an advisory opinion. See *Earl v. Mills*, 278 Ga. 128, 133 (3) (598 SE2d 480) (2004); *Rolleston v. Sea Island Properties*, 254 Ga. 183, 184 (2) (327 SE2d 489) (1985). This Court will likewise decline to respond to certified questions which are anticipatory in nature. See *Nat. Gypsum Co. v. Wammock*, 256 Ga. 803 (353 SE2d 809) (1987); *American Booksellers Assn. v. Webb*, 254 Ga. 399 (329 SE2d 495) (1985).

DECIDED SEPTEMBER 19, 2005.

*Fulcher Hagler, James W. Purcell, L. Dean Best, Amy R. Snell,* for appellants.

*Oliver, Maner & Gray, James P. Gerard, Patrick T. O'Connor, Christopher L. Ray, Paul H. Threlkeld,* for appellee.