CSX TRANSPORTATION, INC., and National Railroad Passenger Corporation (AMTRAK), Plaintiffs,

v.

CITY OF GARDEN CITY, GEORGIA, Defendant/Third Party Plaintiff,

v.

Arco, Inc., Third Party Defendant.

No. 4:98 CV 223 BAE.

United States District Court, S.D. Georgia, Savannah Division.

Jan. 26, 2006.

Amy R. Snell, James W. Purcell, Fulcher Law Firm, Augusta, GA, L. Dean

Best, Haynsworth, Sinkler & Boyd, PA, Charleston, SC, for Plaintiffs.

Christopher L. Ray, James Philip Gerard, Patrick T. O'Connor, Paul Hughes Threlkeld, Oliver, Maner & Gray, LLP, Savannah, GA, for Defendant/Third Party Plaintiff.

Edward R. Stabell, III, Brennan, Harris & Rominger, LLP, Savannah, GA, for Third Party Defendant.

### *ORDER*

EDENFIELD, District Judge.

## I. *INTRODUCTION*

On second remand from the Eleventh Circuit, *CSX Transp., Inc. v. City of Garden City*, 355 F.3d 1295, 1297 (11th Cir. 2004) (*CSX V*), this Court must determine the enforceability of a municipality's indemnification promise to a private party. Doc. # 119 at 1.

## II. *BACKGROUND*

### A. "A Simple Contract"

As previously noted, *id.*, murky legal issues arise from the following factual background:

In 1996 [defendant] Garden City[, Georgia (the City) ] entered into a series of agreements with [plaintiffs] CSX Transportation Inc. and its affiliates to utilize a railroad right-of-way to install water and sewer lines.[1] The agreements required Garden City to indemnify and hold harmless CSX or its subsidiaries for *all* liabilities CSX suffered in connection with the project and for which CSX was not the sole cause. The agreements

---

1. To accomplish that task, the "City employed ARCO, Inc. as the general contractor for this project which employed CARLCO Trucking, Inc. as a sub-contractor." *CSX Transp., Inc.*

also required Garden City to maintain insurance covering the indemnity obligations the City had assumed. In [10/97,] a passenger train collided with a tractor trailer operated by Garden City's subcontractor causing CSX to incur substantial property damage and subjecting CSX to third-party claims.[2] CSX sought indemnification from Garden City in accordance with the agreements. Garden City refused and CSX[3] brought suit alleging that it was entitled to indemnification. [This C]ourt granted summary judgment to the City, finding that the indemnification provision constituted an impermissible waiver of the City's sovereign immunity in the absence of any evidence that the City had liability insurance to cover the indemnity claim. The Eleventh Circuit reversed and remanded to [this C]ourt for its consideration of the effect of the City's participation in the Georgia Interlocal Risk Management Agency (GIRMA), a multi-government insurance fund. On remand, [this C]ourt again granted summary judgment to the City, [*CSX Transp., Inc. v. City of Garden City, Georgia*, 196 F.Supp.2d 1288, 1297 (S.D.Ga.2002) (*CSX II*)], finding that the indemnification agreements were ultra vires and that O.C.G.A. § 36–33–1(a) did not authorize the City to waive its immunity by entering into an indemnity contract.

*CSX Transp., Inc. v. City of Garden City*, 277 Ga. 248, 248–49, 588 S.E.2d 688 (2003)

(*CSX IV*) (footnotes and emphasis added). CSX again appealed to the Eleventh Circuit, which, in *CSX Transp., Inc. v. City of Garden City*, 325 F.3d 1236, 1249 (11th Cir.2003) (*CSX III*), identified a host of issues, then certified two all-encompassing questions to the Georgia Supreme Court:

1. May a Georgia municipality contractually indemnify a private party for any and all loss, damage, and liability arising in connection with a public works project involving the private party's land?

2. If not, is there any loss, damage, or liability arising in connection with a public works project involving a private party's land for which a Georgia municipality may contractually indemnify the private party?

*CSX V*, 355 F.3d at 1296. The answer to these questions led to additional issues discussed in *CSX Transp., Inc. v. City of Garden City*, 391 F.Supp.2d 1234 (S.D.Ga. 2005) (*CSX VI*). Given how unclear Georgia law has become in this area, it is worth pausing to first detail what is clear in order to better understand the Georgia Supreme Court's answer and the Eleventh Circuit's resulting remand.

**B. Sovereign Immunity and Ultra Vires Defenses**

As explained in *CSX VI*, 391 F.Supp.2d at 1238–40, this case is hard to follow because the courts have analyzed the

---

v. *City of Garden City*, 235 F.3d 1325, 1326–27 (11th Cir.2000) (*CSX I*).

**2.** "On [10/9/97] a CARLCO employee drove a tractor-trailer truck to the City's work site to remove equipment. As he crossed CSX's tracks, his truck stalled on the tracks where it was hit by a[n Amtrak] passenger train. CSX paid damages to passengers on the train and sued Garden City for indemnification under their agreement. Garden City filed a third-

party claim against its contractor, ARCO." *CSX I*, 235 F.3d at 1326–27.

**3.** There are two plaintiffs in this case: CSX Transportation, Inc., which owns the train track on which the accident occurred, and National Railroad Passenger Corporation (Amtrak), which owns the wrecked train. For convenience, however, the Court hereafter will refer to "CSX" as if it were the only plaintiff.

CSX–City indemnification contract under both tort and contract doctrines. That has led the courts to navigate between sovereign immunity and ultra vires defenses, sometimes confusingly enmeshing the two. This Court thus underscored these legal distinctions:

● A promise to indemnify another for his own losses, and for tort claims raised against him, is just that: a promise. A breach of that indemnification promise supports a *contract* (not a tort) action.

● There are "two broad categories of indemnity: as created by contract, as between a surety and a debtor; and under the common law of vicarious liability, as between principals and agents." *City of College Park v. Fortenberry*, 271 Ga.App. 446, 451, 609 S.E.2d 763 (2005), *cert. granted* (Ga.5/23/05).

● CSX has not alleged that the City breached any tort duty, or any other private right other than the breach of the CSX–City indemnification agreement. CSX thus advances, both in form and substance, a *contract* claim—as a debtor against a surety.

● Cities do *not* have a sovereign immunity defense to *contract* claims.

● Cities thus invoke sovereign immunity (also called "municipal immunity") only against *tort* claims, and only certain types of torts at that.

● In contrast, cities can defend contract claims by claiming they lacked authority (ultra vires) to enter into the contract.

● So if a city is not authorized by law to contractually indemnify a private party,

a contract doing so should be deemed ultra vires, and sovereign immunity is *irrelevant*. And if the contract is ultra vires, then pointing to insurance to back it does not make it any less ultra vires.

● A city's sovereign immunity against *some* tort claims may be waived, though such waiver is usually linked to non-taxpayer funding sources like insurance for payment of any liability judgment. *See* O.C.G.A. § 36–33–1(a).

● In contrast, some municipal torts (*e.g.,* those sounding in nuisance or arising from the performance of a ministerial duty) receive *no* sovereign immunity protection at all, *see* § 36–33–1(b), which means that there is no immunity to waive, thus rendering the availability of municipal insurance coverage irrelevant.

● So when courts apply § 36–33–1(a), they are analyzing only a *tort* claim that falls into a specific class of torts (hereafter referenced as "sovereign immunity torts" or "SI torts")—torts that a city typically commits in the performance of a governmental, not ministerial, function.[4] Otherwise, § 36–33–1 is irrelevant to *non*-SI torts.

● Only the Georgia legislature, not a city, can waive a city's sovereign immunity from torts by non-insurance methods. A city thus cannot do indirectly— *i.e.*, contractually waive its own sovereign immunity from torts—what it could not otherwise do directly (*i.e.* usurp state legislative power) by enacting a resolution, ordinance, etc. *CSX IV*, 277 Ga. at 250, 588 S.E.2d 688.

---

4. *See, e.g., Goode v. City of Atlanta*, 274 Ga. App. 233, 234, 617 S.E.2d 210 (2005) (Sovereign immunity barred negligence claim brought against city by homeowner, whose house was damaged after a water main near his residence ruptured; municipality was not liable for the negligent acts of its employees in the performance of purely governmental functions, and the power to construct and maintain a sewer and drainage system was a governmental function). In a *"Goode"* situation, a city can waive its sovereign immunity if it purchases insurance and otherwise conforms with § 36–33–1(a).

*CSX VI*, 391 F.Supp.2d at 1238–40 (paraphrased).

To summarize, a municipality can defend against a contract claim by invoking the ultra vires, but *not* the sovereign immunity, defense. In contrast, it can defend against a specific "SI" class of tort claims by invoking sovereign immunity, as codified in O.C.G.A. § 36–33–1(a). That immunity may be waived by a city *only* if it is legislatively authorized to do so and nontaxpayer funding (like insurance) covers it. Finally, a city *cannot* defend against non-SI torts by invoking sovereign immunity.

## C. The Issues Raised Here

The core issue raised here, then, has been whether the City can contractually indemnify a private party (CSX) for damages flowing from (a) SI torts; and (b) *non*-SI torts, the latter of which would include the torts committed against CSX by both the City *and/or* a private party (*e.g.*, CARLCO). That was one of several issues posed to the Georgia Supreme Court by the Eleventh Circuit in *CSX III*, see *CSX VI*, 391 F.Supp.2d at 1240–46, and it was raised in light of the fact that CSX has *never* advanced a tort, but only a contract claim, against the City. *CSX III*, 325 F.3d at 1241 n. 6.

Unfortunately, the supreme court answered very little. In *CSX IV* "Division 1," it purported to answer "no" to whether a municipality could contractually indemnify a private party for that party's losses—caused not just by the city but by others—arising from a public works project on that party's private land. *Id.* Key to its analysis on that issue was this passage:

Here, the indemnification agreements required the City to indemnify CSX for "all liability, loss, claim, suit, damage, charge, or expense which CSX may suffer, sustain, incur or in any way be subjected to ... except when caused solely by the fault or negligence of CSX." Because nothing in OCGA § 36–33–1 can be construed to permit a municipality to waive its *sovereign immunity* by contracting to indemnify a third party, the indemnification agreement between the City and CSX is void as an ultra vires contract. CSX concedes there is no statutory authority for the City to waive its *sovereign immunity* by entering into a contract of indemnity. We decline CSX's invitation to find that municipalities have an implied authority to do what is expressly reserved to the legislature.

*CSX IV*, 277 Ga. at 250, 588 S.E.2d 688 (cites omitted) (emphasis added). The supreme court thus limited its focus to whether the City could, by contract, agree to pay CSX for *SI-tort* damages that CSX may have suffered. It concluded that the City could not agree to pay CSX for *SI-tort* damages because nothing enabled it to contractually waive its sovereign immunity; CSX thus would have to invoke the normal § 36–33–1(a) process like anyone else.

That holding, standing alone, is clear. But the *CSX IV* court ignored the fact that there is no sovereign immunity from *non*-SI tort damages. Possibly, then, given that sovereign immunity cannot serve as a bar to CSX's *non*-SI tort damages, the supreme court may have gone too far in declaring the *entire contract*—which purports to require indemnification for *all* of CSX's damages—void.

In that regard, the *CSX III* court expressly noted that the contract contained a severability clause, 325 F.3d at 1243 n. 12. Thus, if the contract was void to the extent

it sought to waive sovereign immunity for SI torts, then did that fatally taint the entire contract, thus rendering it void—despite the severability clause? *See Park Regency Partners v. Gruber,* 271 Ga.App. 66, 78 n. 23, 608 S.E.2d 667 (2004) (when a contract is severable, even an invalid portion will not render the other provisions of the contract void) (citing *Horne v. Drachman,* 247 Ga. 802, 805, 280 S.E.2d 338 (1981)); *Harris v. Sal Fin. Servs. Inc.,* 270 Ga.App. 230, 232, 606 S.E.2d 293 (2004) ("In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder"); 7 GA.JUR.CONTRACTS (*Contracts* ) § 3:4 (Aug.2005). The *CSX IV* court did not answer that question.

The *CSX IV* court's failure to examine this severability issue led it to make a possibly overbroad pronouncement on the validity of the indemnification contract. After *CSX IV,* it is clear that the City could not *contractually* waive its sovereign immunity as to SI torts. Nevertheless, the *CSX IV* court *apparently* held that CSX would have an SI *tort* cause of action against the City to the extent of the City's GIRMA liability coverage:

[a]lthough the [CSX–City] indemnification provision itself is void, and does not, therefore, effectuate a waiver of the City's sovereign immunity, CSX contends that sovereign immunity was waived by the City's participation in GIRMA. Under the plain terms of OCGA § 36–33–1, if a municipality purchases liability insurance sovereign immunity is waived only as to those occurrences for which sovereign immunity would apply. We have held that the purchase of a GIRMA coverage agreement as authorized by OCGA §§ 36–85–

1 to 36–85–20 constitutes the purchase of liability insurance. Thus, if the facts behind CSX's cause of action against the City fall within the scope of coverage provided by the GIRMA policy and sovereign immunity would otherwise apply to that cause of action, the City's sovereign immunity is waived to the extent of such liability coverage.

*CSX IV,* 277 Ga. at 250–51, 588 S.E.2d 688 ("Division 2") (cite omitted).

This Court has used the word "apparently" above because it seems odd that the Georgia Supreme Court would discuss the availability of *tort* claims when the questions certified to it spoke only of a *contract* claim. *See CSX IV,* 277 Ga. at 250–51, 588 S.E.2d 688. Nonetheless, "Division 2" discusses a tort claim, despite the Eleventh Circuit's expressed belief that sovereign immunity most probably is inapplicable to CSX's contract claims. *CSX III,* 325 F.3d at 1241–42 n. 6 (citing Georgia precedent stating that it is inapplicable but then citing "a remarkably similar case involving Florida law" that made this seem a "grey area").

In fact, however, CSX brings only *contract* claims against the City. *See CSX III,* 325 F.3d at 1241 n. 6; *see also* doc. # 1; # 2 ¶ 2. Thus, it remains for this Court to determine whether the City could contractually assume liability for losses to which sovereign immunity is *irrelevant*—that is, for those "non-SI torts" as to which the City had no sovereign immunity defense to begin with (these would include non-SI torts committed by another private party, or non-SI torts caused by the City through one of its agents or subcontractors).

The Georgia Supreme Court did offer some oblique comments on this issue. It held that it

is irrelevant that the invalid indemnification agreement covered occurrences to which *sovereign immunity* both did and did not apply. Under Georgia law, *sovereign immunity* may be waived only by an act of the legislature and the legislature has provided that municipal *sovereign immunity* may be waived only by the purchase of liability insurance if the "policy of insurance issued covers an occurrence for which the defense of *sovereign immunity* is available, and then only to the extent of the limits of such insurance policy." OCGA § 36–33–1(a).

*CSX IV*, 277 Ga. at 251, 588 S.E.2d 688 (emphasis added).

This is, to say the least, a confusing passage. Once again, the Georgia Supreme Court begs the question whether a severable contract that purports to indemnify a party against both SI-torts and non-SI torts should be *entirely* void. That court says the answer is yes, but it supports that answer by saying only that the City could not contractually waive its sovereign immunity. *Id.* Yet in the case of *non*-SI torts, there is *no* sovereign immunity for the City to waive.

Thus, the supreme court's comment that the indemnification agreement has no effect on the issue of waiver of immunity is meaningless—*unless* Georgia law in fact does have, as the *CSX III* court suggested, a "grey area" in which sovereign immunity may somehow be invoked in a contract context like this case. *See CSX III*, 325 F.3d at 1241 n. 6. Unfortunately, because the Georgia Supreme Court spoke only to those claims for which sovereign immunity is traditionally a defense, this Court is left to wonder whether sovereign immunity can defeat an indemnity *contract* claim (and on a contract that covered both SI- *and* non-SI tort damages) *outright.*

Worse, the *CSX IV* decision led the Eleventh Circuit to remand back to this Court on the same crimped view of the issues. That court summarized that "Georgia municipalities may never waive their sovereign immunity by, for example, contracting to indemnify third parties, *without* (1) express legislative authority or (2) satisfying the requirements of [O.C.G.A.] § 36–33–1(a)." *CSX V*, 355 F.3d at 1297.

In any event, while it is now clear that the City could not contractually waive its own sovereign immunity, this Court (in *CSX VI*) concluded that it was *not* clear whether the City could otherwise contractually indemnify a private party for *non*-SI type claims (both those non-SI tort claims caused by the City as well as those caused by private parties) for which sovereign immunity is irrelevant. *See CSX VI*, 391 F.Supp.2d at 1241. The issue is critical to cities that wish to facilitate municipal works while traversing or encroaching on a private party's land. As this Court explained, there is no clear answer to be found in Georgia law. Nor did the Georgia Supreme Court provide it.

## D. The Second Remand

Despite this lack of clarity, the Eleventh Circuit remanded the case to this Court, noting that *if:* (a) the City purchased GIRMA coverage as authorized by O.C.G.A. §§ 36–85–1 to 36–85–20; (b) the facts behind CSX's cause of action against the City fall within the scope of that coverage; and (c) sovereign immunity would otherwise apply to that cause of action, *then* the City's sovereign immunity is waived to the extent the terms of the liability policy cover same. *CSX IV*, 277 Ga. at 250–51, 588 S.E.2d 688; *CSX V*, 355 F.3d at 1297.

In other words, that court, like the *CSX IV* court, restricted its focus to only the

plain-vanilla, SI-tort claims issue, and ignored the argument that the City faces non-sovereign immunity, *contractual* exposure here (*i.e.,* it contracted to absorb the cost of CSX's—hence, non-SI—losses, losses for which the sovereign immunity defense and thus corresponding insurance coverage are irrelevant).

That over-restricted focus complicated matters on remand. Doc. # 119 at 2–8. For starters, CSX followed the same crimped view and thus focused on showing that the City waived its sovereign immunity by purchasing insurance to cover CSX's claims. Without bothering to acknowledge that it has pled and litigated only a contract claim, it thus sought to demonstrate how the GIRMA policy covers its train-wreck damages. In that vein, GIRMA, the only party CSX says would ultimately pay any judgment entered here, *see* doc. # 112 at 19, was not and remains not a party to this case.

Moreover, in pursuing only "partial" summary judgment, CSX had expressly limited its request for relief to a mere declaration that the GIRMA policy covers its claims and thus that the City has waived its *sovereign immunity* to the extent of the coverage. Doc. # 112 at 6 ("the issue at this juncture is whether Garden City has waived its sovereign immunity by purchasing GIRMA insurance").

This led the Court to question, *inter alia,* whether (a) CSX sought an advisory opinion; (b) GIRMA is an indispensable party; and (c) CSX expected the City to pay if GIRMA does not—and if CSX has no such expectation, what more does it want from the City? The Court thus re-

quested further briefing. Doc. # 119 at 8–9. Both CSX and Garden City complied via summary judgment motions. Doc. # # 122, 126. ARCO also renewed its prior summary judgment motion. Doc. # 138.

### E. CSX's Summary Judgment Motion

In its summary judgment brief, CSX clarified that

[a]fter exhaustive and comprehensive review on this thorny legal issue ... the nature of [CSX's] action against Garden City is a direct action[5] for a damage award that will be satisfied from the insurance proceeds available under the [C]ity's GIRMA policy, *up to the limits of the policy.* If GIRMA refuses to satisfy the judgment, [CSX] can enforce the judgment by filing an action against GIRMA, but [CSX] cannot sue GIRMA directly under it [until] after it receive[s] a judgment against the [C]ity.

Doc. # 128 at 2 (emphasis and footnote added). CSX then provided much discussion on the procedural mechanics by which it in effect would sue the City but collect only from GIRMA. *Id.* at 4–25.

Still basically ignoring the contract/tort distinctions retraced *supra,* CSX read *CSX IV* "Division 2" as placing the City (through its indemnification promise) in CSX's shoes in terms of absorbing CSX's train-wreck losses—*i.e.,* that the City was liable "SI-tort-wise" but only to the extent that GIRMA will pay out on those claims. CSX thus need only show, CSX argued, how its claims are covered by the GIRMA policy, then obtain judgment against the

---

**5.** Tellingly, CSX would not identify whether it pursued a contract or tort action, much less whether it thought GIRMA covered contract claims. In fact, it has *always* pursued a contract claim. *See CSX III,* 325 F.3d at 1241 n. 6; *see also* doc. # 1; # 2 ¶ 2.

City, to be paid by GIRMA. Doc. # 128 at 12–13, 24.

CSX cited two GIRMA policy provisions to show that the facts behind its claims fit within the GIRMA policy. Doc. # 128 at 10; # 96 at 8, 9; # 112 at 9. It also cited policy language barring an action against GIRMA until a judgment is first obtained against the City. Doc # 128 at 10–11 (citing doc. # 97 exh. B at 7 ¶ 1(A)). Thus, it concluded, it can recover a judgment against the City up to the policy's coverage limits, and GIRMA need not be a party to this action. *Id.* at 11, 24.

CSX thus completely ignored the tort/contract (and, within tort, the SI-tort, non-SI tort claim) distinctions and treated this case as if it held—through the parties' contract—an SI-tort claim against the City, for which insurance is available to pay out on the claim. In effect, CSX argues that *CSX IV* "Division 2" enables it to *contractually* bring an SI-tort claim against the City so long as it can point to GIRMA coverage.

Opposing CSX's brief, the City likewise glossed over those distinctions. It argued, *inter alia*, that the indemnification contract claim against the City has specifically been found *totally* void by the *CSX IV* court, so there is now no basis for holding the City liable and thus no need for this Court to determine if the facts behind CSX's claim fit within the GIRMA policy. Doc. # 124 at 5; # 135 at 3 (hereafter, the City's "first ultra vires argument").

To hedge its bets, the City further argued that even if the indemnification contract is not void outright per *CSX IV's* reasoning, it nevertheless is "void under O.C.G.A. § 36–30–3(a) as ... preventing free legislation and also ... creating unlawful public debt." Doc. # 135 at 4 (hereafter, the "second ultra vires argument").

Since the parties' arguments simply lost many of the distinctions illuminated in Part II(B) *supra*, this Court found itself unable to resolve the remand issues, so it explored the CSX–City indemnification contract, retraced the various *CSX III*-posed issues that the *CSX IV* court never answered, then certified additional questions to the Georgia Supreme Court. *CSX VI*, 391 F.Supp.2d at 1240–46. That court, however, declined to respond on procedural grounds. *CSX Transp., Inc. v. City of Garden City*, 279 Ga. 655, 619 S.E.2d 597 (2005) (*CSX VII*).

## III. ANALYSIS

### A. "Void as an Ultra Vires Contract"

In declining to answer this Court's additional questions, the Georgia Supreme Court took

> this opportunity to reiterate our holding in *CSX IV*, that the indemnification agreement between the City and CSX is void as an ultra vires contract. *CSX IV* at 250(1), 588 S.E.2d 688.

*CSX VII*, 279 Ga. at 658 n. 4, 619 S.E.2d 597. Unfortunately, that court provided no additional elaboration (*i.e.*, is the contract *completely* void?). Instead, it merely cited to its *CSX IV* opinion which, to reiterate, failed to consider the contract's severability clause in declaring the contract void.

Nevertheless, the City seizes on that passing footnote in renewing its summary judgment motion. It argues that the *CSX VII* court

> has *reiterated* that the indemnity contract at issue is null and void. [*CSX VI*, 279 Ga. at 658 n. 4, 619 S.E.2d 597]. As this Court has previously noted, "CSX does not allege that the City breached any tort duty, or any other private right

other than the breach of the CSX–City indemnification agreement." [*CSX VI*, 391 F.Supp.2d at 1238].

Doc. # 141 at 2 (emphasis added). However, the City does not acknowledge the *CSX VII* court's lack of elaboration on whether a contract ultra vires in one respect fatally voids the remainder of the agreement. Instead, the City emphasizes that

> there is no direct [tort] claim for negligence against the City of Garden City. The only possible source of liability for Garden City in this case is the indemnity *contract*.[6] The Georgia Supreme Court has declared that the contract is unequivocally null and void. There being no other theory of liability as to Garden City, it is entitled to summary judgment.

*Id.* (footnote and emphasis added). "What [the City] has overlooked," CSX counters,

> is the underlying rationale of that [*CSX VII*] holding: that the agreements are ultra vires because Code Section 36–33–1 does not permit the City to waive its immunity in this manner. Thus, according to the Supreme Court, unless the City has insurance coverage, which will waive this immunity, then the City is

entitled to assert the defense of immunity. [CSX] respectfully submits that it has established that there is insurance coverage under the City's GIRMA policy, which waives the City's immunity. Therefore, the City is not entitled to assert the defense of sovereign immunity.

Doc. # 142 at 2.

Significantly, CSX's counter-argument pretends that this case is limited to a plain vanilla, SI-tort claim against the City for the *City's* torts, in which case CSX need only cite to covering (GIRMA) insurance to pay out on it.[7] CSX thus ignores the undisputed fact (correctly illuminated by the City) that CSX has brought *no* tort claim of any sort against the City, only an indemnification *contract* claim that the City must pay CSX for damages the City, if not others, tortiously caused.

But CSX—like anyone else—has been free to sue the City for the *City's* SI-torts (assuming the existence of covering insurance). There is not, and never has been, a need for CSX to rely on a separate contract to do so. Perhaps CSX has been lulled by the confusing *CSX IV* discussion

---

6. The City is correct with respect to these first two sentences. CSX does not dispute them, and the record supports the City here.

7. This is spelled out in no uncertain terms in CSX's latest brief:

> Presently, however, CSX is only asking the Court for a partial judgment, resolving (and eliminating from this litigation) the issue of whether Garden City is protected by *sovereign immunity*, which necessarily must include a determination of GIRMA insurance coverage. If that issue is resolved in CSX's favor—which it should be for the reasons stated here and previously—there can then be a determination of both Garden City's

liability, if any, to CSX (*e.g.*, whether CSX's damages were caused solely by the fault or *negligence* of CSX) and the amount of CSX's damages. At that point, final judgment in hand, CSX can seek satisfaction from GIRMA, up to the limits of its insurance coverage, minus any deductible.

Doc. # 142 at 3 ("CSXT" converted to "CSX"; emphasis added). Here CSX persists in speaking in terms of *someone's* negligence (a *tort* claim), then contractually transforming it into an *SI*-tort claim against the City, to be run through the sovereign-immunity, insurance-availability construct found in standard SI-tort cases.

into advancing a legally confused claim now.[8]

The more fundamental problem for CSX, however, is that it has pled and proceeded on only a *contract*-based theory of recovery in this case. *See CSX III*, 325 F.3d at 1241 n. 6; *see also* doc. #1; #2 ¶2. In this latest round of briefs it has abandoned pursuit of that contract claim by venturing down the traditional, *tort* liability (SI-tort plus covering insurance can yield a recovery) path.[9]

Put another way, CSX has now confined itself to an SI-*tort* claim recovery theory while advancing, at bottom, only a *contract* claim. Pressing an SI-tort claim theory to recover on a contract is legally inconsistent, and CSX has not invoked F.R.Civ.P. 15(a) to amend its claim (nor would such be granted at this late hour, for CSX has known about this distinction for *years*). CSX's case against the City therefore fails as a matter of law.[10]

Alternatively, this Court holds that CSX could not prevail because the *CSX VII* court's reiteration that the contract is

"void" signals that in fact the contract is *entirely* void notwithstanding its severability clause and the precedent this Court cited in *CSX VI*, 391 F.Supp.2d at 1244 n. 11. In effect, this Court is taking the *CSX VII* court's "hint" that when it said "void" in *CSX IV* it meant void in all respects, even if its rationale for overcoming the contract's severability clause is not apparent to this Court. This result neutralizes CSX's contract claims against the City and therefore renders GIRMA coverage (the remand) issues moot.

**B. Hedging Argument**

The City, meanwhile, evidently grasps the contract/tort distinctions analyzed *supra*, because it has hedged its main argument. It reasons that, in the event CSX sought to extend beyond the SI-tort claim framework and advance a contractual indemnification claim, such would subject the City to "unlimited exposure," thus rendering the contract ultra vires. The "only instance," the City says, in

which [its] financial exposure would be limited to GIRMA's coverage limits

8. In fairness to CSX, it is navigating through confusing precedent. As noted, *CSX IV*, reiterated in *CSX VII*, established that parties cannot by contract bypass the current scheme whereby one may successfully sue a city only for that city's SI-torts *if* those torts fit within O.C.G.A. § 36–33–1 (and thus, there is covering insurance). But neither of those opinions discusses *contractual* indemnity claims like CSX's for non-SI torts caused by a city or others. CSX has thus had to feel its way through uncharted legal terrain here.

9. This Court therefore need not address whether the indemnification contract can be construed to cover *non*-SI torts, which include (ministerial, nuisance-based) torts by the City itself *and* torts committed by third parties (like CARLCO). The same may be said for whether, in *CSX IV* and *CSX VII*, the Georgia Supreme Court ever explicitly said

that the contract is void to the extent it may cover *non*-sovereign-immunity-based promises. CSX thus has elected to abandon any claim under these theories, as were discussed in *CSX VI*, 391 F.Supp.2d at 1243–44.

10. This Court does not raise claims on behalf of litigants before it. *See Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned") (cite omitted); *accord Barnes v. Crowne Investments, Inc.*, 391 F.Supp.2d 1108, 1114 (S.D.Ala.2005).

would be a situation in which a sovereign immunity [hence an SI] tort claim was being asserted against Garden City, thus limiting Garden City's exposure to the limits of its lawful waiver of immunity by the purchase of insurance.[11] *See CSX IV, supra.* There is no such claim against Garden City in this case. As this Court correctly stated in its most recent opinion, "CSX thus advances, both in form and substance, a contract claim." [*CSX VI,* 391 F.supp.2d at 1238].

Doc. # 143 at 2 (footnote added). The contract itself (specifically § 10.4), the City further contends, fails to limit the City's possible exposure to the amount of its insurance coverage. Doc. # 58, exh. A at 7 ("Securing such insurance shall not limit the Licensee's liability under this Agreement, but shall be additional security therefor"). Thus, the City concludes, its

> potential exposure would be unlimited under the indemnification agreement if CSX is allowed to pursue a contract indemnification claim. As recognized by the Georgia Supreme Court, the contract is void. *Otherwise,* the public purse would be clearly and unlawfully exposed for an unlimited period of time and in an unlimited amount.

Doc. # 143 at 3 (emphasis added). With its "otherwise" sentence the City re-invokes its second ultra vires argument—

that the contract is "void under O.C.G.A. § 36–30–3(a) as ... preventing free legislation and also ... creating unlawful public debt." Doc. # 135 at 4; *see also CSX VI,* 391 F.Supp.2d at 1244–45. The City disingenuously pretends that the *CSX IV* court reached that argument (unlimited time/amounts exposure), when in fact the *CSX IV* court expressly did *not. CSX IV,* 277 Ga. at 251, 588 S.E.2d 688; *CSX VI,* 391 F.Supp.2d at 1244 n. 12.

The City is thus conflating the *CSX IV* "Division 1" conclusion that the contract is "void" with the City's *own* conclusion that the contract is "void under O.C.G.A. § 36–30–3(a) as ... preventing free legislation and also ... creating unlawful public debt." Doc. # 135 at 4. Again, no court has reached that argument.

Nevertheless, because CSX confines itself here to an SI-*tort* recovery theory while proceeding on only a *contract* claim, its entire case against the City fails. It therefore is not necessary to reach the City's "hedge" argument, nor the specific issues on remand.

Accordingly, the City is entitled to summary judgment against CSX, and CSX's partial summary judgment motion is denied. The City's third-party claim against its contractor (ARCO) remains, however, *see supra* note 2; *see also* doc. # 9 ¶ 7 (the City seeks defense costs from ARCO), so the parties shall, within 20 days of the date

---

**11.** The City is only partially correct here. Cities can—*without* legislative permission—contract for all sorts of things. *See CSX VI,* 391 F.Supp.2d at 1239 n. 5 ("Cities have implied power to contract for goods and services to support ordinary municipal functions like street lights", *see generally* 10 McQuillin Mun Corp. § 29.05.10 (3rd ed. July 2004), but contracts beyond that realm face "political" and "time" restrictions"). And the City points to no clear legal authority restricting a

city from contracting to pay a private party for tort damages caused by a private (here, third) party, much less for a city's own non-SI (*e.g.,* nuisance) tort conduct. Nor does the City cite a GIRMA provision precluding coverage for a city's purely *contractual* liability. At most the City relies on the generalized "void" statement contained in *CSX IV* and *CSX VII*—something this Court now accepts only as an alternative, reinforcing ground for ruling against CSX.

this Order is served, brief all remaining issues in this case, including whether this Court's jurisdiction remains intact if CSX's case is dismissed against the City.[12]

## IV. CONCLUSION

The Court **GRANTS** the motion (doc. # 122, as renewed, # 141) of defendant Garden City, Georgia against plaintiffs CSX Transportation, Inc., and the National Railroad Passenger Corporation, and therefore **DISMISSES WITH PREJU-DICE** plaintiffs' Complaint against it. The Court **DENIES** plaintiffs' motion for partial summary judgment. Doc. # 126,

as renewed, # 142. This case is not closed, however. *See supra* notes 2 & 12. The parties shall provide further briefing as directed above.

---

**12.** CSX pled diversity jurisdiction, doc. # 1 at 4 ¶ 5, and the City—without pleading ARCO's citizenship—later filed a third-party claim against ARCO. Doc. # 9. "[I]t is well settled that there need be no independent jurisdictional basis for such a [third-party] claim if diversity of citizenship exists between the original parties." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. § 1444 (*Ancillary Jurisdiction*) at 321–22 (2d ed.1990); *Garfield Slope Housing Corp. v. Public Service Mut. Ins. Co.*, 973 F.Supp. 326, 329 (E.D.N.Y.1997). But 28 U.S.C. § 1367(b) can be tricky, *Matter of Florida*

*Wire & Cable Co.*, 102 F.3d 866, 867 (7th Cir.1996), and one issue here is what becomes of the Court's jurisdiction when the original plaintiff (CSX) is dismissed, leaving the original defendant (now third-party plaintiff) to litigate its claim against a possibly nondiverse, third-party defendant. *See* FED. PRAC. & PROC. § 1444 at 340 (discussing judicial treatment of ancillary jurisdiction over third-party claims "if the original action is settled or disposed of in some other fashion before the ancillary claim is adjudicated").