[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 10, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11805

_____

D. C. Docket No. 98-00223-CV-4

CSX TRANSPORTATION, INC.,
NATIONAL RAILROAD PASSENGER CORPORATION,

Plaintiffs-Cross-
Defendants-Appellants,

versus

CITY OF GARDEN CITY, GA,

Defendant-Third-Party-
Plaintiff-Appellee,

versus

ARCO, INC.,

Third-Party-Defendant-
Cross-Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(December 10, 2007)**

Before BIRCH and PRYOR, Circuit Judges, and COVINGTON,[*] District Judge.

PER CURIAM:

In this appeal, we consider whether a Georgia municipality is liable under a license agreement for personal injury and property damage caused by a train collision. Plaintiffs-cross-defendants-appellants CSX Transportation, Inc. ("CSX") and National Railroad Passenger Corporation ("Amtrak") appeal the district court's grant of summary judgment to defendant-third-party-plaintiff-appellee City of Garden City, Georgia (the "City") and third-party-defendant-appellee ARCO, Inc. ("ARCO"). Because we have determined that CSX and Amtrak cannot establish liability under the license agreement, and have not pled a claim sounding in tort, we AFFIRM.

## I. BACKGROUND

This case is before us for the fourth time. In a previous related opinion, the Georgia Supreme Court set out the facts as follows:

> In 1996, the City entered into a series of agreements with CSX to utilize a railroad right-of-way to install water and sewer lines. The agreements required the City to indemnify and hold harmless CSX or its subsidiaries for all liabilities CSX incurred in connection with the project and for which CSX was not the sole cause. The agreements also required the City to maintain insurance

---

[*] Honorable Virginia M. Hernandez Covington, United States District Judge for the Middle District of Florida, sitting by designation.

covering the indemnity obligations the City had assumed. The City employed ARCO, Inc. ("ARCO") as the general contractor for its pipeline installation project. In October 1997, a National Railroad Passenger Corporation ("Amtrak") passenger train collided with a tractor trailer operated by the City's subcontractor causing CSX to incur substantial property damage and subjecting CSX to third-party claims. CSX sought indemnification from the City in accordance with the agreements. The City refused and CSX[1] brought suit alleging that it was entitled to indemnification.

The District Court granted summary judgment to the City, finding that the indemnification provisions constituted an impermissible waiver of the City's sovereign immunity in the absence of any evidence that the City had liability insurance to cover the indemnity claim. The Eleventh Circuit vacated the entry of summary judgment and remanded the case to the District Court for its consideration of the effect of the City's participation in the Georgia Interlocal Risk Management Agency ("GIRMA"), a multi-government insurance fund. *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325 (11th Cir. 2000) ("*CSX I*"). On remand, the District Court again granted summary judgment to the City, finding that the indemnification agreements were ultra vires and that OCGA § 36-33-1(a) did not authorize the City to waive its immunity by entering into an indemnity contract. *CSX Transp., Inc. v. City of Garden City, Georgia*, 196 F. Supp. 2d 1288 (S.D. Ga. 2002) ("*CSX II*").

CSX again appealed to the Eleventh Circuit, which then certified two questions to [the Georgia Supreme]

---

[1] There are two plaintiffs in the case: CSX which owns the train track on which the collision occurred and Amtrak, which owns the wrecked train. For convenience, the [court] refers to CSX as if it [were] the only plaintiff.

Court:

>  1. May a Georgia municipality contractually indemnify a private party for any and all loss, damage, and liability arising in connection with a public works project involving the private party's land?
>
>  2. If not, is there any loss, damage, or liability arising in connection with a public works project involving a private party's land for which a Georgia municipality may contractually indemnify the private party?

*CSX Transp., Inc. v. City of Garden City*, 325 F.3d 1236 (11th Cir. 2003) ("*CSX III*").

[The Georgia Supreme] Court answered both certified questions in the negative. *CSX Transp., Inc. v. City of Garden City*, 277 Ga. 248, 588 S.E.2d 688 (2003) ("*CSX IV*"). In so doing, [the Georgia Supreme] Court noted that

>  if the facts behind CSX's cause of action against the City fall within the scope of the coverage provided by the GIRMA policy and sovereign immunity would otherwise apply to that cause of action, the City's sovereign immunity is waived to the extent of such liability coverage.

*CSX IV*, [277 Ga.] at 251, 588 S.E.2d 688. Based upon CSX IV, the Eleventh Circuit concluded that

>  Georgia municipalities may never waive their sovereign immunity by, for example, contracting to indemnify third parties, without (1) express legislative authority or (2) satisfying the requirements of § 36-33-1(a).

4

*CSX Transp., Inc. v. City of Garden City*, 355 F.3d 1295, 1297 (11th Cir. 2004) ("*CSX V*"). The Eleventh Circuit found that "while the indemnification agreement between the City and CSX was correctly determined by the district court to be void as ultra vires, it must again remand the case to the District Court for consideration of whether, pursuant to O.C.G.A. § 36-33-1(a), Garden City waived its sovereign immunity as to CSX's cause of action by purchasing GIRMA insurance." Id. It further determined that on remand,

> the district court must scrutinize the GIRMA policy and consider if the facts behind CSX's cause of action against the City fall within the scope of coverage provided by the GIRMA policy and sovereign immunity would otherwise apply to that cause of action to determine whether the City's sovereign immunity was waived to the extent of such liability coverage.

(Punctuation omitted). Id. The Eleventh Circuit therefore affirmed in part and remanded in part the decision of the District Court for further proceedings consistent with its opinion.

CSX Transp., Inc. v. City of Garden City, 279 Ga. 655, 656-58, 619 S.E.2d 597, 598-99 (2005) ("CSX VII"). Instead of ruling on the issues framed by this Court on remand, the district court certified five additional questions to the Georgia Supreme Court. CSX Transp., Inc. v. City of Garden City, 391 F. Supp. 2d 1234, 1245-46 (S.D. Ga. 2005) ("CSX VI"). The Georgia Supreme Court declined the certified questions, but took the "opportunity to reiterate [their] holding in *CSX IV*, that the indemnification agreement between the City and CSX is void as an ultra

5

vires contract.  CSX VII, 279 Ga. at 658 n.4, 619 S.E.2d at 599.

The district court then granted the City's motion for summary judgment and denied CSX's motion for partial summary judgment.  CSX Transp., Inc. v. City of Garden City, 418 F. Supp. 2d 1366, 1378 (S.D. Ga. 2006) ("CSX VIII").  The district court found that, in the latest round of briefs filed in the district court, CSX relied on a sovereign immunity *tort* theory of liability, while CSX "pled and proceeded on only a *contract*-based theory of recovery" during the remainder of the case, which was CSX's "indemnification *contract* claim that the City must pay CSX for damages the City, if not others, tortiously caused."  CSX VIII, 418 F. Supp. 2d at 1375-76.  In a prior opinion, the district court recognized that "CSX does not allege that the City breached any tort duty, or any other private right other than the breach of the CSX-City indemnification agreement."  CSX VI, 391 F. Supp. 2d at 1238.  The district court further noted that CSX never attempted to invoke Federal Rule of Civil Procedure 15(a) to amend its claim, "nor would such be granted at this late hour."  CSX VIII, 418 F. Supp. 2d at 1376.  As a result, the district court found that CSX was pursuing a "legally inconsistent" theory, which "therefore fails as a matter of law."  Id.  Alternatively, the district court found that it is impossible for CSX to recover damages under the contract because the Georgia Supreme Court twice declared the indemnification agreement between

6

CSX and the City to be void, which moots the insurance coverage issues on remand. Id. This appeal followed.

## II. DISCUSSION

We review the grant or denial of summary judgment de novo, applying the same standard as the district court. Kinnon v. Arcoub, Gopman & Assocs., Inc., 490 F.3d 886, 890 (11th Cir. 2007). Summary judgment is appropriate when, "viewing all facts and reasonable inferences in the light most favorable to the nonmoving party," "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (citation omitted); Fed. R. Civ. P. 56. The facts in this case are not in dispute. Rather, CSX argues that the district court reversibly erred by finding that CSX abandoned its contract claim against the City, and by concluding that the insurance coverage issues have been mooted by the Georgia Supreme Court's holding that the indemnity agreement between CSX and the City is void.[2]

In CSX's complaint, CSX presented a claim for "contractual indemnity," seeking damages under the indemnification provision of its contract with the City.[3]

---

[2] Because we find that the district court correctly determined that CSX abandoned its contract claim against the City, we do not address its alternative holding that the GIRMA coverage issues are moot.

[3] CSX's claims have always sounded in contract, as they acknowledge in their brief. (Appellees' Br. 14)

7

R1-1 at 5-8. The Georgia Supreme Court twice held that the indemnification provision was void. CSX then argued in the district court, and on appeal, that it could recover damages under the contract's separate insurance provision.[4] Pursuant to O.C.G.A. § 36-33-1(a), CSX argues that an event occurred (the train collision) as a result of a party's fault or negligence, causing personal injury and property damage covered by the City's GIRMA policy, and the City waived its ability to rely on sovereign immunity through its purchase of GIRMA insurance. On that basis, CSX contended that the City was liable to CSX for tort damages covered by the GIRMA policy, because the City assumed such liability under its contract with CSX and purchased insurance to cover such liability.

As the district court correctly found, CSX's right to sue the City for torts covered by the GIRMA policy does not arise from CSX's contract with the City. See CSX VIII, 418 F. Supp. 2d at 1375-76. That right is conferred by O.C.G.A. § 36-33-1(a) itself, which provides:

---

[4] No court has ever found the City to be in breach of the insurance provision.

8

> there is no waiver of the sovereign immunity of
> municipal corporations of the state and such municipal
> corporations shall be immune from liability for damages.
> A municipal corporation shall not waive its immunity by
> the purchase of liability insurance, ... unless the policy of
> insurance issued covers an occurrence for which the
> defense of sovereign immunity is available, and then only
> to the extent of the limits of such insurance policy.

Id. The Georgia Supreme Court further clarified this issue, explaining that "the indemnification agreement between CSX and the City has no effect on the issue of the City's waiver of immunity both because it is void and because under OCGA § 36-33-1(a) it is the purchase of insurance that effectuates the waiver of sovereign immunity." CSX IV, 277 Ga. at 250, 588 S.E.2d at 690. By the plain terms of the statute, the City waived its sovereign immunity to the extent that it purchased liability insurance covering occurrences to which sovereign immunity otherwise would apply. Therefore, CSX did not need to sue on its contract with the City to seek tort damages covered by the GIRMA policy.

The district court also correctly determined that, in the latest stage of this case, CSX abandoned its contract theory of liability and embraced a tort theory that it had never pled before. CSX now argues that the City is liable for damages caused by the train collision because the City has waived its sovereign immunity from certain torts through its purchase of liability insurance. Even though CSX contends that the City assumed liability for such damages under its contract with

9

CSX, the Georgia Supreme Court's opinion establishes that the City exposed itself to tort liability by purchasing GIRMA insurance, not by entering into the contract with CSX. CSX IV, 277 Ga. at 250, 588 S.E. 2d at 690. The district court is correct; the contract has no bearing on this claim because CSX has transformed its contract claim into a tort claim. CSX's case has always been predicated upon an underlying train collision, for which the City may or may not have waived its immunity from tort liability, but CSX cannot use the insurance provision of its contract with the City to bootstrap an unpled tort claim into this case. CSX never pled a claim sounding in tort, and we cannot construe CSX's pleadings so liberally as to present such a claim. See Maniccia v. Brown, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999) ("the liberal construction afforded a pleading . . . does not require courts to fabricate a claim that a plaintiff has not spelled out in his pleadings"). Because the district court correctly found that CSX abandoned its contract claim against the City, and CSX never moved to amend its pleadings under Federal Rule of Civil Procedure 15(a) to assert a claim sounding in tort,[5] we affirm the district court's grant of summary judgment to the City.

---

[5] At oral argument, counsel for CSX acknowledged that CSX had never filed such a motion because the district judge indicated that it would be denied. Even if that were true, this Court cannot review the effect of a potential denial of a motion that was never filed.

### III. CONCLUSION

Plaintiffs-cross-defendants-appellants CSX and Amtrak appealed the district court's grant of summary judgment to Defendant-third-party-plaintiff-appellee City of Garden City and Third-party-defendant-appellee ARCO. Because we have determined that CSX and Amtrak cannot establish that the City is liable under the license agreement between CSX and the City, and because CSX has not pled a tort claim, we affirm the district court's grant of summary judgment to the City.

**AFFIRMED.**